**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE TENEYCK MINERAL TRUST,
BY C. ANDREW TENEYCK, TRUSTEE,

      Plaintiff,

v

CHESAPEAKE ENERGY CORPORATION,
SILVER LAKE ENERGY, LLC,
ENCANA CORPORATION, and
ENCANA OIL & GAS (USA) INC.

      Defendants.
_____/

Case No. 1:14-cv-00201-GJQ

Judge Gordon J. Quist

**ENCANA'S MOTION TO DISMISS COUNT V OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

Brian J. Masternak (P57372)
Charles N. Ash, Jr. (P55941)
Lance R. Zoerhof (P63980)
David R. Whitfield (P73352)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
bmasternak@wnj.com
cash@wnj.com
lzoerhof@wnj.com
dwhitfield@wnj.com
616.752.2000

Susan L. Hlywa Topp (P46230)
TOPP LAW PLC
213 Main St. Gaylord, MI 49734
susan@topplaw.com
989.731.4014

*Co-Counsel for Plaintiff*

Gregory L. Curtner (P12414)
Robert J. Wierenga (P59785)
Frederick R. Juckniess (P64032)
Jessica A. Sprovtsoff (P70218)
SCHIFF HARDIN LLP
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
Telephone: (734) 222-1506
gcurtner@schiffhardin.com
rjuckniess@schiffhardin.com
jsprovtsoff@schiffhardin.com

*Counsel for Defendants Encana Corporation and Encana Oil & Gas (USA) Inc.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Encana Corporation and Encana Oil & Gas (USA) Inc., (together "Encana") hereby move to dismiss Count V of the Complaint (Dkt. No. 1, the "Complaint") filed by Plaintiff The TenEyck Mineral Trust, by C. Andrew TenEyck, Trustee ("TenEyck") against Encana for failure to state a claim on which relief may be granted.  As detailed further in the accompanying brief in support, the Court should dismiss Count V of the Complaint because it fails to state a claim upon which relief may be granted.  In accordance with Rule 7.1(d) of the Local Rules of the United States District Court for the Western District of Michigan, counsel for Encana certifies that they explained the basis for this motion to Plaintiff's counsel, but did not obtain concurrence in the relief sought by this motion.

Accordingly, Encana respectfully requests that the Court grant its motion to dismiss Count V of the Complaint, and grant any other relief the Court deems just and appropriate.

Dated:  May 29, 2013                                     Respectfully submitted,

                                                        SCHIFF HARDIN LLP

                                                        */s/ Gregory L. Curtner*
                                                        Gregory L. Curtner (P12414)
                                                        350 S. Main Street, Ste. 210
                                                        Ann Arbor, MI  48104
                                                        734-222-1500 (Phone)
                                                        734-222-1501 (Fax)
                                                        gcurtner@schiffhardin.com

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE TENEYCK MINERAL TRUST,
BY C. ANDREW TENEYCK, TRUSTEE,

      Plaintiff,

v

CHESAPEAKE ENERGY CORPORATION,
SILVER LAKE ENERGY, LLC,
ENCANA CORPORATION, and
ENCANA OIL & GAS (USA) INC.

      Defendants.
_____/

Case No. 1:14-cv-00201-GJQ

Judge Gordon J. Quist

**ENCANA'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNT V OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

Brian J. Masternak (P57372)
Charles N. Ash, Jr. (P55941)
Lance R. Zoerhof (P63980)
David R. Whitfield (P73352)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
bmasternak@wnj.com
cash@wnj.com
lzoerhof@wnj.com
dwhitfield@wnj.com
616.752.2000

Susan L. Hlywa Topp (P46230)
TOPP LAW PLC
213 Main St. Gaylord, MI 49734
susan@topplaw.com
989.731.4014

*Co-Counsel for Plaintiff*

Gregory L. Curtner (P12414)
Robert J. Wierenga (P59785)
Frederick R. Juckniess (P64032)
Jessica A. Sprovtsoff (P70218)
SCHIFF HARDIN LLP
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
Telephone:  (734) 222-1506
gcurtner@schiffhardin.com
rjuckniess@schiffhardin.com
jsprovtsoff@schiffhardin.com

*Counsel for Defendants Encana Corporation and Encana Oil & Gas (USA) Inc.*

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF ALLEGED FACTS ............................................................................................. 2

LEGAL STANDARD ........................................................................................................................ 6

ARGUMENT ..................................................................................................................................... 7

I.     Teneyck Fails to State a Cognizable Claim for Tortious Interference Against Encana. ..... 7

II.    TenEyck's Allegations Concede that TenEyck Chose to Pass Up these "Business Relationships" and No Offers Were Withdrawn by Third Parties Due to "Interference" ... 9

III.   TenEyck Fails to Allege Facts Demonstrating that Encana had Knowledge of the Alleged Business Relationship ........................................................................................ 10

IV.   TenEyck Fails to Allege that Encana Acted Affirmatively and Improperly Relies Upon Encana's Alleged Failure to Act .............................................................................. 10

CONCLUSION ................................................................................................................................ 12

# **INDEX OF AUTHORITIES**

## **CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................... 6, 7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................... 6, 7

*BPS Clinical Labs v. Blue Cross and Blue Shield of Mich.*,
   217 Mich. App. 687, 552 NW2d 919 (Mich. Ct. App. 1996) ...................................... 11

*CBC Companies, Inc. v. Equifax, Inc.*,
   561 F.3d 569 (6th Cir. 2009) .......................................................................................... 6

*Centroni Ass'n, Inc. v. Tomblinson, Harburn Assoc, Architects & Planners, Inc.*,
   492 Mich. 40, 821 NW2d 1 (2012) ................................................................................ 8

*Courie v. Alcoa Wheel & Forged Prods.*,
   577 F.3d 625 (6th Cir. 2009) .......................................................................................... 6

*Dzierwa v. Michigan Oil Co.*,
   152 Mich. App. 281, 393 NW2d 610 (1986) ................................................................. 7

*Feldman v. Green*,
   138 Mich. App. 360, 360 NW2d 881 (1985) ............................................................... 11

*Formall, Inc. v. Cmty. Nat. Bank of Pontiac*,
   166 Mich. App. 772 (1988) .......................................................................................... 11

*LidoChem, Inc. v. Stoller Enterprises, Inc.*,
   No. 10-1686, 2012 WL 4009709 (6th Cir. Sep. 12, 2012) ............................................ 9

*Lown Companies LLC v. Piggy Paint, LLC*,
   No. 1:11-CV-911, 2012 WL 3277188 (W.D. Mich. Aug. 9, 2012) ............................. 11

*Midwest Auto Auction, Inc. v. McNeal*,
   No. 11-14562, 2012 WL 3478647 (E.D. Mich. Aug. 14, 2012) .................................... 8

*Mino v. Clio School Dist.*,
   255 Mich. App. 60, 661 NW2d 586 (2003) ................................................................. 11

*Needa Parts Mfg., Inc. v. PSNet, Inc.*,
   635 F. Supp. 2d 642 (E.D. Mich. 2009) ........................................................................ 8

*New York Carpet World, Inc. v. Grant*,
   912 F.2d 463 (4th Cir. 1990) ............................................................................................... 8

*NicSand, Inc. v. 3M Co.*,
   507 F.3d 442 (6th Cir. 2007) ............................................................................................... 7

*NorthStar Energy LLC v. Encana Corp. et al.*,
   Case No. 1:13-cv-00200-PLM............................................................................... passim

*Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc.*,
   11-CV-15326, 2012 WL 1931519 (E.D. Mich. May 29, 2012) ................................................. 8

*Sierra Club v. City of Holland*,
   No. 08-CV-1183, 2010 WL 816864 (W.D. Mich. Mar. 4, 2010)............................................. 6

*Spectrum Cubic, Inc. v. Grant Prods. de Mexico, S.A. de C.V.*,
   1:11-CV-308, 2013 WL 504650 (W.D. Mich. Feb. 8, 2013) .................................................... 11

*Trepel v. Pontiac Osteopathic Hosp.*,
   135 Mich. App. 361, 354 NW2d 341 (1984).................................................................. 7, 8, 10

*Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*,
   623 F.3d 281 (6th Cir. 2010) ............................................................................................... 11

*Wausau Underwriters Ins. Co. v. Vulcan Development Inc.*,
   323 F.3d 396 (6th Cir. 2003) ...................................................................................... 7, 10, 11

*Wilkey v. Hull*,
   366 Fed. App. 634 (6th Cir. 2010).............................................................................................. 9

## RULES

Fed. R. Civ. P. 8(a) ............................................................................................................... 6

Fed. R. Civ.P. 12(b)(6)................................................................................................. 1, 11, 12

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Encana Corporation and Encana Oil & Gas (USA) Inc., (together "Encana") hereby move to dismiss Count V of the Complaint (Dkt. No. 1, the "Complaint") filed by Plaintiff The TenEyck Mineral Trust, by C. Andrew TenEyck, Trustee ("TenEyck") against Encana for failure to state a claim on which relief may be granted.

## PRELIMINARY STATEMENT

TenEyck Mineral Trust is the latest plaintiff to sue Encana because a *different* oil and gas company – Chesapeake Energy Corporation, Encana's competitor and co-defendant in this case – allegedly failed to follow through on its commitment to purchase mineral rights in Northern Michigan. Like the plaintiff in *NorthStar Energy LLC v. Encana Corp. et al.*, Case No. 1:13-cv-00200-PLM,[1] TenEnyck, has accused Encana of tortiously interfering with TenEyck's efforts to sell its mineral rights by engaging in an antitrust conspiracy with Chesapeake. Although Encana believes that TenEyck's antitrust allegations fall short of what Rule 12(b)(6) requires, this Court previously found that NorthStar's similar claims were sufficiently pled. Case No. 1:13-cv-00200, Dkt. 37. Rather than belabor this point at the pleadings stage, Encana will prove the utter baselessness of TenEyck's antitrust claims on summary judgment. Those claims are not the subject of the present motion.

This motion, instead, focuses on TenEyck's tortious interference claim against Encana, which should be dismissed for the same reasons that NorthStar's very similar tortious interference claim was dismissed. *Id.* at 15-17. TenEyck admits that Chesapeake was the high bidder for its mineral interests in 2010, and that TenEyck stopped negotiating with other oil and

---

[1] Perhaps not surprisingly, NorthStar and TenEyck are represented by the same lawyers at Warner, Norcross & Judd.

1

gas companies after Chesapeake submitted its final bid of $1,800/acre. It alleges that Chesapeake acted wrongfully when it "retracted" that offer rather than closing on the purchase of TenEyck's interests. What TenEyck does *not* do – indeed, cannot do – is allege facts demonstrating that Encana had anything to do with any of this, let alone committed tortious interference. TenEyck (like NorthStar) has failed to allege facts demonstrating (1) that it had the sort of "business relationship" that Michigan law requires for a claim of tortious interference; (2) that Encana knew about any of TenEyck's alleged "relationships" or (3) that Encana took affirmative acts to "interfere" with any of those alleged "relationships." TenEyck's tortious interference claim against Encana must be dismissed in light of these pleading failures.

## STATEMENT OF ALLEGED FACTS

TenEyck is the alleged owner of 625 acres of mineral rights in Kalkaska, which it was trying to sell during a period of high speculation and bubble pricing in Michigan in 2010. Dkt. 1 at ¶¶ 3-4. These bubble conditions followed Encana's drilling of a test well in Kalkaska County exploring the Utica/Collingwood formation. That well visibly "flared" gas in early 2010, and after initial results from the well were made public on April 24, 2010, speculation about the potential value of Utica/Collingwood mineral interests increased. At the May, 2010 auction of Utica/Collingwood mineral rights owned by the State of Michigan, bidding generated some prices exceeding 10 times the existing average. Dkt. 1 at ¶¶ 2-3. After the well-publicized results of that auction, TenEyck apparently expected that buyers would line up to meet and beat any demands made, even at the newly-inflated prices.

TenEyck solicited bids for its interests, Dkt. 1 at ¶¶ 44 & 92, and alleges that it received the following bids before choosing one and attempting to negotiate a written agreement:

- May 14 – Atlas email "willing to pay $750 per acre" (Dkt. 1 at ¶¶ 121).

- June 17 – Chesapeake Letter of Intent (via Silver Lake) offering $1,500 per acre (Dkt 1. at ¶97).

- June 22 – Energy West email "offering" $1,750 per acre (Dkt. 1 at ¶ 121).[2]

- July 7 – Chesapeake (via Silver Lake) offering $1,800 per acre (Dkt. 1 at ¶¶ 98-99).

On July 15, 2010, Encana informed several potential lessors that it was suspending further leasing in Michigan. Dkt. 1 at ¶ 65. Later that same day, at 7:20 p.m., TenEyck's agent sent an email to Silver Lake saying that TenEyck "has decided to accept" Chesapeake's last offer. Dkt. 1 at ¶ 100. On July 21, Chesapeake rescinded its offer and stated that any further leasing would be limited. Dkt. 1 at ¶ 102. TenEyck never entered into a contract with Chesapeake and apparently never leased its Utica/Collingwood mineral rights at any price.

In support of its tortious interference count, TenEyck does not allege that Encana interfered with the Chesapeake negotiations, or any other actual or potential "business relationship" or expectancy with Chesapeake or Silver Lake. Instead, the only alleged "business relationship" identified by TenEyck is the opportunity to receive, and consider, the lucrative leasing offers from *other* oil and gas companies that it apparently believes were its due:

> Plaintiff had a business relationship or expectancy with Atlas and Energy West. Plaintiff also had an advantageous leasehold position when profitability peaked for northern Michigan deep well rights. (Dkt. 1 at ¶ 123)

> Plaintiff had offers to lease its mineral rights from other oil and gas companies or had been negotiating to lease its minerals rights to other oil and gas companies. Plaintiff had written offers from Atlas for $750 an acre with a 1/6 royalty and from Energy West for $1,750 per acre with a 3/16 royalty. (Ex. 5; Ex. 12) (Dkt. 1 at ¶ 121)

---

[2]   It is worth noting, however, that the exhibit TenEyck cites in support of this allegation does not really support it. Complaint Exhibit 12 is an email dated June 22, 2010, which reads "We are interested in the Excelsior acreage at this time; same terms as Brown if that would work (minus the non-development)." (Dkt. 1 at 1-12). Nothing identifies this email as having been received from Energy West.

3

TenEyck fails to allege that Encana engaged in any conduct to interfere with these amorphous "business relationships," which cannot support a tortious interference claim in any event.[3]

On the contrary, TenEyck admits that it freely chose not to pursue relationships with Atlas, Energy West and unidentified "other" oil and gas companies, for the simple reason that Chesapeake had made a better offer:

> As a result of the above representations and assurances made by Silver Lake to the Plaintiff, Plaintiff discontinued negotiations with Atlas, Energy West, and WLS.
>
> Because of the lease agreement reached with Silver Lake and Chesapeake, Plaintiff forbore from negotiating with and/or turned down lease offers made to it by Defendants' competitors.

Dkt. 1 at ¶¶ 105, 122. TenEyck's "interference" allegations are thus limited to the novel – and legally impermissible – notion that Chesapeake "interfered" with TenEyck's leasing efforts by making TenEyck an offer that was too good to refuse:

> Defendants intentionally interfered with the Plaintiff's business relationship or expectancy by manipulation of the market by offering Plaintiff large bonus amounts, effectively pricing competition out of the market and then defaulting on their obligation to pay.

*Id*. at ¶125.

Whatever the merits of these allegations against Chesapeake, they are utterly insufficient to state a tortious interference claim against Encana. TenEyck alleges no facts to demonstrate that Encana had anything to do with either Chesapeake's alleged offer to TenEyck, or with Chesapeake's alleged subsequent "default" of its "obligations" to TenEyck. TenEyck alleges no facts demonstrating that Encana knew, or cared, about the TenEyck-Chesapeake negotiations, let alone that it took affirmative steps to use those negotiations as a means of interfering with

---

[3] TenEyck's allegation regarding an offer from Energy West is particularly misguided, since Energy West was one of the brokers leasing on Encana's behalf during the time period in question.

4

TenEyck's "relationships" with other oil and gas companies. Nor does it allege facts to support its claim that Encana knew anything about TenEyck in general or TenEyck's efforts to license its mineral rights in particular. Instead, TenEyck's allegations against Encana are limited almost entirely to the conclusory, and insufficient, use of the plural "defendants" when describing the alleged interference. *See e.g.*, Dkt. 1 at ¶¶ 120-128.

Indeed, TenEyck's allegations affirmatively *undermine* its claim that Encana is somehow responsible for Chesapeake's alleged wrongdoing during the TenEyck-Chesapeake negotiations. TenEyck claims that Chesapeake regularly enters plays similar to the Utica/Collingwood formation in Michigan, and then bids high amounts to acquire mineral rights quickly in order "to tie up the mineral rights before its competitors can," (Dkt. 1 at ¶72), only to later "renege on the leases and claim that the titles contain a defect or use any other rationale in an attempt to justify its cancellation/rejection of the leases." Dkt. 1 at ¶72 & 137-40.[4] TenEyck claims that this alleged strategy permitted Chesapeake to treat its offer and alleged obligation to purchase TenEyck's interests as a "speculative option" rather than as a binding contract. *Id.* Accepting these allegations as true, TenEyck has alleged only that it fell victim to Chesapeake's well-established, *unilateral* business strategy, not that Encana engaged in any wrongful conduct. Here, as elsewhere, the Complaint provides no factual support for TenEyck's tortious

---

[4] TenEyck alleges, in relevant part: "Chesapeake's attempt to extricate itself from the obligation to pay the lessors the bonus money due under the oil and gas leases is consistent with Chesapeake's practice of treating oil and gas leases, not as contracts, but as speculative options. Chesapeake prides itself in sending its "land acquisition machine" into a new shale play to grab up as many oil and gas leases as fast as possible to tie up the mineral rights before its competitors can. Then, in the event Chesapeake determines it would be to its advantage to avoid those obligations for whatever reason, Chesapeake reneges on the leases and claims that the titles contain a defect or uses any other rationale in an attempt to justify its cancellation/rejection of the leases." Dkt. 1 at ¶72.

5

interference claim against Encana. For this reason, and those explained below, that claim should be dismissed.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain sufficient factual allegations to support a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007); *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009); *Sierra Club v. City of Holland*, No. 08-CV-1183, 2010 WL 816864, at *1 (W.D. Mich. Mar. 4, 2010). TenEyck is required to plead factual allegations that, taken as true, allow for "more than a sheer possibility that a defendant has acted unlawfully…Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," *id*. at 679, and the court will "accept a plaintiff's factual allegations as long as they 'raise a right to relief above a speculative level.'" *CBC Companies, Inc. v. Equifax, Inc.*, 561 F.3d 569, 571 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 544).

Though the general pleading standards set forth in *Twombly* and *Iqbal* apply to all claims governed by Federal Rule of Civil Procedure 8(a), the Supreme Court has acknowledged that the costs associated with antitrust discovery are "potentially enormous." *Twombly*, 550 U.S. at 559. It is thus particularly appropriate for district courts in antitrust cases "to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 558 (internal quotation marks omitted). Accordingly, "the federal courts have been reasonably

aggressive in weeding out meritless antitrust claims at the pleading stage." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (internal quotation marks omitted). TenEyck's claim of tortious interference falls far short of what is required by *Twombly*, *Iqbal*, and the law of the Sixth Circuit, and should be dismissed.

## ARGUMENT

TenEyck's claim of tortious interference against Encana must be dismissed. Michigan law requires that plaintiffs alleging tortious interference with a business expectancy plead (a) the existence of a valid business relationship or expectancy; (b) the defendant's knowledge of that expectancy; (c) that the defendant intentionally interfered with that expectancy and caused its breach or termination; and (d) resulting damage to the plaintiff. *See, e.g., Wausau Underwriters Ins. Co. v. Vulcan Development Inc.*, 323 F.3d 396, 404 (6th Cir. 2003). TenEyck has not alleged facts sufficient to establish any of these elements with respect to Encana.

**I.  TenEyck Fails to Allege a Sufficiently Certain Business Expectancy**

First, TenEyck has failed to allege facts demonstrating that it possessed a cognizable business relationship or expectancy. As noted above, the "business expectancy" identified by TenEyck is only its expectation that it would receive lucrative offers from oil and gas companies other than Chesapeake. However, its factual allegations fall far short of what is required to support a tortious interference claim on that theory.

Michigan law is clear that a plaintiff seeking damages for tortious interference must specifically allege the relationships (current or expected) with which the defendant(s) purportedly interfered. *Dzierwa v. Michigan Oil Co.*, 152 Mich. App. 281, 287, 393 NW2d 610 (1986); *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361, 377, 354 NW2d 341 (1984); *see also Midwest Auto Auction, Inc. v. McNeal*, No. 11-14562, 2012 WL 3478647, *14 (E.D.

7

Mich. Aug. 14, 2012); *Needa Parts Mfg., Inc. v. PSNet, Inc.*, 635 F. Supp. 2d 642, 649 (E.D. Mich. 2009); *Reliable Carriers, Inc. v. Excellence Auto Carriers, Inc*., 11-CV-15326, 2012 WL 1931519, *2 (E.D. Mich. May 29, 2012). A prospective expectancy must be a "reasonable likelihood or probability, not mere wishful thinking." *Centroni Ass'n, Inc. v. Tomblinson*, *Harburn Assoc, Architects & Planners, Inc.*, 492 Mich. 40, 45, 821 NW2d 1, 3 (2012) (quoting *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361, 377, 354 NW2d 3412 (1984)).

The business expectancy identified by TenEyck fails to meet this requirement. For example, TenEyck alleges that the damage that resulted from TenEyck's acceptance of the Chesapeake/Silver Lake bid was that it "miss[ed] the opportunity to lease its minerals to another company." (Dkt. 1 at ¶126). Thus, TenEyck has alleged nothing more than the hope that if it had continued to entertain bids instead of accepting Chesapeake/Silver Lake's bid, it would have sold its rights to a different competitor at peak profitability.[5] But as this Court held on almost identical facts in *NorthStar Energy LLC v. Encana Corp. et al.*, this sort of allegation is insufficient as a matter of law: the "competitive bid process does not rise to the requisite level of a business expectancy." Case No. 1:13-cv-00200, Dkt. 37 at 20. As a result, the Court held that NorthStar had no cognizable business expectancy that Encana (or any others) would submit competing bids for its leases at a competitive price. *Id; see also New York Carpet World, Inc. v. Grant*, 912 F.2d 463 (4th Cir. 1990) (holding that a leasing offer made to Plaintiff was insufficient to create a reasonable certainty that Plaintiff would have accepted the offer, absent the alleged interference, and thus that there was no cognizable business expectancy).

---

[5]  TenEyck identifies two example "offers": written offers from Atlas for $750 an acre with a 1/6 royalty and from Energy West for $1,750 per acre with a 3/16 royalty. Dkt. 1 at ¶121.

As it was in *NorthStar*, TenEyck's alleged "expectancy" that the competitive bidding process would, if it had continued, have resulted in TenEyck receiving an even better offer from Atlas, Energy West or some other company, is insufficient to support a tortious interference claim. TenEyck's tortious interference claim should be dismissed.

**II. TenEyck's Allegations Concede that TenEyck Chose to Pass Up these "Business Relationships" and No Offers Were Withdrawn by Third Parties Due to "Interference"**

TenEyck has also failed to allege that Encana's conduct induced or prevented any third parties from entering into or continuing a business relationship with TenEyck. "One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, ***by inducing a third person*** not to enter into or continue a business relation with another or ***by preventing a third person*** from continuing a business relation with another." *LidoChem, Inc. v. Stoller Enterprises, Inc.,* No. 10-1686, 2012 WL 4009709, *10 (6th Cir. Sep. 12, 2012) (emphasis added). A plaintiff must allege facts showing that the conduct caused the end of the relationship. *Wilkey v. Hull*, 366 Fed. App. 634 (6th Cir. 2010) ("Absent some factual allegation that [the defendant's] actions ended or prevented a business relationship, [the plaintiff] does not state a claim."). TenEyck's allegations plainly fail under this criteria.

For example, TenEyck has alleged no facts demonstrating that Encana took any act to prevent a third party from doing business with TenEyck. Nor has it alleged facts demonstrating that Encana took any act to induce Chesapeake or anyone else not to go through with forming a business relationship with TenEyck. On the contrary, TenEyck affirmatively alleges that it ***voluntarily*** chose to cease negotiations with Atlas and others based on Chesapeake's offer. Dkt.

9

1 at ¶¶ 122.[6] The fact TenEyck now apparently regrets that choice does not provide any basis for a tortious interference claim against Encana.

### III. TenEyck Fails to Allege Facts Demonstrating that Encana had Knowledge of the Alleged Business Relationship

TenEyck has also failed to allege any facts that demonstrate that Encana even ***knew*** about TenEyck's alleged business relationships, let alone that Encana interfered with those relationships. This, too, is fatal to TenEyck's claim against Encana: tortious interference plaintiffs must demonstrate that the alleged tortfeasor was aware of the relationship with which it allegedly interfered. *See e.g.*, *Wausau Underwriters*, 323 F.3d at 404 (tortious interference requires "knowing behavior on the part of the defendant"); *Trepel*, 135 Mich. App. at 377 (requiring "personal knowledge.") TenEyck has alleged nothing of the sort. There is no allegation that TenEyck informed Encana of any of its pending bids, or of its expectations regarding its opportunity to solicit additional bids. Nor does the Complaint explain how Encana learned, or even could have learned, about TenEyck's supposed business expectancy through any other means. For this reason as well, TenEyck's tortious interference claim should be dismissed.

### IV. TenEyck Fails to Allege that Encana Acted Affirmatively and Improperly Relies upon Encana's Alleged Failure to Act

Finally, the tortious interference claim against Encana should be dismissed because TenEyck has failed to allege any facts demonstrating that Encana affirmatively acted to prevent a third party from contracting with TenEyck. In order to state a valid claim for tortious interference, "a plaintiff must demonstrate, with specificity, ***affirmative acts*** by the interferer which corroborate the unlawful purpose of the interference." *Formall, Inc. v. Cmty. Nat. Bank of*

---

[6] For example, paragraph 122 alleges: "Because of the lease agreement reached with Silver Lake and Chesapeake Plaintiff forbore from negotiating with and/or turned down lease offers made to it by Defendants' competitors." Dkt. 1 at ¶122.

10

*Pontiac*, 166 Mich. App. 772, 779 (1988); *see also Feldman v.* Green, 138 Mich. App. 360, 378, 360 NW2d 881 (1985); *Warrior Sports, Inc. v. Nat'l Collegiate Athletic Ass'n*, 623 F.3d 281, 287 (6th Cir. 2010); *Spectrum Cubic, Inc. v. Grant Prods. de Mexico, S.A. de C.V.*, 1:11-CV-308, 2013 WL 504650 (W.D. Mich. Feb. 8, 2013)("To establish tortious interference, however, a plaintiff must show that the defendant committed some act that interfered with the relationship. Wilder's failure to attend the…meeting and his refusal to communicate with Autoliv were not acts, but inaction.").[7]

TenEyck has failed to allege any requisite, affirmative act of interference by Encana. Instead, it has at most alleged inaction on Encana's part – that Encana "failed" to prevent TenEyck from accepting Chesapeake's offer. As this Court held in *NorthStar*, that sort of allegation cannot support a tortious interference claim against Encana. Like TenEyck, NorthStar had failed to allege any affirmative conduct by Encana that was purportedly intended to induce Chesapeake to disaffirm its purported obligations to NorthStar, and had failed to allege any action taken by Encana after Northstar had accepted Chesapeake's offer. The Court held that, without any facts establishing an affirmative act by Encana, the claim could not survive at the 12(b)(6) stage. Case No. 1:13-cv-00200, Dkt. 37 at 15-17. TenEyck's allegations are, if anything, even less adequate than Northstar's allegations: TenEyck has failed to even specify which relationship(s) Encana purportedly interfered with through its inaction, let alone plead

---

[7] Moreover, there are no allegations in the Complaint to establish Encana decided to forego leasing in Michigan in order to interfere with any business that TenEyck was doing, as opposed to for Encana's own, legitimate business purposes. *See, e.g., Feldman v. Green*, 138 Mich. App. 360, 368, 360 NW2d 881 (1985). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Wausau Underwriters*, 323 F.3d at 404 (citing *BPS Clinical Labs v. Blue Cross and Blue Shield of Mich.*, 217 Mich. App. 687, 552 NW2d 919, 925 (Mich. Ct. App. 1996)); *Lown Companies LLC v. Piggy Paint, LLC*, No. 1:11-CV-911, 2012 WL 3277188, at *4 (W.D. Mich. Aug. 9, 2012) (citing *Mino v. Clio School Dist.*, 255 Mich. App. 60, 78, 661 NW2d 586 (2003)).

facts demonstrating that Encana took active steps to interfere with those alleged relationships.[8] TenEyck's tortious interference claim should therefore be dismissed.

## CONCLUSION

TenEyck should have agreed to voluntarily dismiss its tortious interference claim against Encana, particularly since the *NorthStar* Order granting Encana's motion to dismiss NorthStar's tortious interference claim put TenEyck's counsel on notice that this nearly-identical claim cannot survive 12(b)(6) scrutiny. TenEyck has failed to plead any viable business relationship, failed to plead knowledge of such a relationship by the alleged interferer, and failed to plead any wrongful and affirmative act of interference. For all of the foregoing reasons, Encana respectfully submits that TenEyck's tortious interference claim should be dismissed.

Dated: May 29, 2013 

Respectfully submitted,

SCHIFF HARDIN LLP

*/s/ Gregory L. Curtner*
Gregory L. Curtner (P12414)
350 S. Main Street, Ste. 210
Ann Arbor, MI 48104
734-222-1500 (Phone)
734-222-1501 (Fax)
gcurtner@schiffhardin.com

---

[8] It also seems impossible that Encana could tortiously interfere – by action or inaction – with TenEyck's decision to accept Chesapeake's offer instead of others. TenEyck knew as of July 15, 2010, that Encana was no longer taking new leases in Michigan. Thus, Encana could not have impacted any of TenEyck's decisions after July 15, 2010, including the decision to accept Chesapeake's offer, regardless of TenEyck's theory of interference.

12

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2014 a copy of the foregoing was filed with the Court using the ECF system which will send notification of such filing to all attorneys of record.

> By: */s/ Gregory L. Curtner*
> Gregory L. Curtner

41983-0003
AA\200091049.1

13