IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THE TENEYCK MINERAL TRUST, BY C. ANDREW TENEYCK, TRUSTEE, | Case No.14-cv-00201-GJQ |
| Plaintiff, | Hon. Gordon J. Quist |
| v. | |
| CHESAPEAKE ENERGY CORPORATION, SILVER LAKE ENERGY, LLC, ENCANA CORPORATION, and ENCANA OIL & GAS (USA) INC., | **BRIEF IN SUPPORT OF SILVER LAKE ENERGY LLC'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

Brian J. Masternak (P57372)
Charles N. Ash, Jr. (P55941)
Lance R. Zoerhof (P63980)
David R. Whitfield (P73352)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
bmasternak@wnj.com
cash@wnj.com
lzoerhof@wnj.com
dwhitfield@wnj.com
616.752.2000
Co-Counsel for Plaintiff

Susan L. Hlywa Topp (P46230)
TOPP LAW PLC
213 Main St.
Gaylord, MI 49734
susan@topplaw.com
989.731.4014
Co-Counsel for Plaintiff

Molly S. Boast
Jason D. Hirsch
Hanna A. Baek
Ryan D. Tansey
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212.230.8800
molly.boast@wilmerhale.com
jason.hirsch@wilmerhale.com
hanna.baek@wilmerhale.com
ryan.tansey@wilmerhale.com

Anthony J. Rusciano (P29834)
Dennis G. Cowan (P36184)
Michael J. Barton (P34509)
PLUNKETT COONEY, P.C.
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
arusciano@plunkettcooney.com
248.901.4000
*Attorneys for Defendants Chesapeake Energy Corporation and Silver Lake Energy, LLC*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ...........................................................................................................................3

I. LEGAL STANDARD..................................................................................................3

II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST SILVER LAKE FOR VIOLATION OF THE SHERMAN ACT AND THE MICHIGAN ANTITRUST REFORM ACT ...............................................................................................................5

    A. The Complaint Does Not Allege Active And Knowing Participation by Silver Lake In Any Conspiracy................................................................................6

    B. Plaintiff Cannot Rely On Guilt By Association To Satisfy Its Pleading Burden As To Silver Lake ......................................................................................9

III. PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD IN THE INDUCEMENT AGAINST SILVER LAKE .....................................................................12

IV. PLAINTIFF FAILS TO STATE A CLAIM AS AGAINST SILVER LAKE FOR CIVIL CONSPIRACY..................................................................................................13

CONCLUSION.........................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ago v. Begg, Inc.*,
  705 F. Supp. 613 (D.D.C. 1988), *aff'd*, 911 F.2d 819 (D.C. Cir. 1990) ...................................6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................3, 4

*Banxcorp v. Apax Partners, L.P.*,
  No. 10-CV-4769, 2011 WL 1253892 (D.N.J. Mar. 28, 2011)....................................................4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................................................4, 9, 10

*Brown v. Donco Enterprises, Inc.*,
  783 F.2d 644 (6th Cir. 1986) ......................................................................................................5

*City Communications, Inc. v. City of Detroit*,
  695 F. Supp. 911 (E.D. Mich. 1988), *aff'd*, 888 F.2d 1081 (6th Cir. 1989) ...............................8

*Courie v. Alcoa Wheel & Forged Products*,
  577 F.3d 625 (6th Cir. 2009) ......................................................................................................3

*Foundation for Interior Design Education Research v. Savannah College of Art &
  Design*,
  244 F.3d 521 (6th Cir. 2001) ......................................................................................................4

*Future Now Enterprises, Inc. v. Foster*,
  860 F. Supp. 2d 420 (E.D. Mich. 2012), *aff'd*, 525 F. App'x 395 (6th Cir. 2013)...................13

*Hinds County, Mississippi v. Wachovia Bank N.A.*,
  620 F. Supp. 2d 499 (S.D.N.Y. 2009).......................................................................................10

*Hinds County, Mississippi v. Wachovia Bank N.A.*,
  790 F. Supp. 2d 106 (S.D.N.Y. 2011).........................................................................................9

*In re Appraiser Foundation Antitrust Litigation*,
  867 F. Supp. 1407 (D. Minn. 1994), *aff'd sub nom. National Association of Review
  Appraisers & Mortgage Underwriters, Inc. v. Appraisal Foundation*, 64 F.3d 1130
  (8th Cir. 1995)............................................................................................................................9

*In re Elevator Antitrust Litigation*,
  502 F.3d 47 (2d Cir. 2007).........................................................................................................4

*In re Fine Paper Antitrust Litigation*,
    685 F.2d 810 (3d Cir. 1982)..................................................................................................9

*In re Southeastern Milk Antitrust Litigation*,
    801 F. Supp. 2d 705 (E.D. Tenn. 2011).............................................................................5, 9

*In re Travel Agent Commission Antitrust Litigation*,
    583 F.3d 896 (6th Cir. 2009) .............................................................................................6, 10

*Matsushita Electrical Industries Co., v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..............................................................................................................8

*Michigan Division - Monument Builders of North America v. Michigan Cemetery
    Assocation*,
    458 F. Supp. 2d 474 (E. D. Mich. 2006), *aff'd*, 524 F.3d 726 (6th Cir. 2008).........................10

*Midwest Auto Auction, Inc. v. McNeal*,
    No. 11-14562, 2012 WL 3478647 (E.D. Mich. Aug. 14, 2012)...........................................5

*Monsanto Co. v. Spray-Rite Service Corp.*,
    465 U.S. 752 (1984)..............................................................................................................5

*Perceptron, Inc. v. Sensor Adaptive Machines Inc.*,
    221 F.3d 913 (6th Cir. 2000) ...............................................................................................5

*Peterson v. Foco*,
    No. 1:09-cv-233, 2009 WL 2337153 (W.D. Mich. July 16, 2009) ........................................4

*Schmitt v. FMA Alliance*,
    398 F.3d 995 (8th Cir. 2005) ...............................................................................................6

*U.S. v. $6,976,934.65, Plus Interest Deposited into Royal Bank of Scotland International
    Account No. 2029–56141070, Held in Name of Soulbury Ltd.*,
    554 F.3d 123 (D.C. Cir. 2009) .............................................................................................6

*United States v. American Radiator & Standard Sanitary Corp.*,
    433 F.2d 174 (3d Cir. 1970)................................................................................................10

*United States v. Falcone*,
    311 U.S. 205 (1940)..............................................................................................................9

*Williams v. Duke Energy International,Inc.*,
    681 F.3d 788 (6th Cir. 2012) ...............................................................................................4

**STATE CASES**

*Blair v. Checker Cab Co.*,
    558 N.W.2d 439 (Mich. Ct. App. 1996) ...............................................................................5

- iv -

**FEDERAL STATUTES**

15 U.S.C. § 1 ...................................................................................................................5

**STATE STATUTES**

M.C.L. § 445.772 ..........................................................................................................5

**RULES**

Federal Rule of Civil Procedure 9(b) .........................................................................13

Federal Rule of Civil Procedure 8 ..............................................................................13

**OTHER AUTHORITIES**

Restatement (Third) of Agency § 5.03, cmt. g (2006) .................................................6

**INTRODUCTION**

In 2010, Silver Lake Energy, LLC ("Silver Lake") acted as a leasing agent for Chesapeake Energy Corporation ("Chesapeake") in Michigan. In this narrow role, Silver Lake assisted Chesapeake with the acquisition of oil and gas leases. Silver Lake's work included a negotiation with Plaintiff TenEyck Mineral Trust ("TenEyck") over a possible lease of its land that never came to fruition. In this action, Plaintiff alleges that it was offered less than market value for its land because of a purported anticompetitive agreement between Chesapeake and one of its competitors, Encana Corporation ("Encana"), acting through its subsidiary Encana Oil & Gas USA Inc. ("Encana USA"). The complaint consists of pages upon pages detailing the alleged conspiracy between these two companies. Compl. ¶¶ 32-63. Those pages do not include a single reference to Silver Lake.

Plaintiff asserts antitrust claims against Silver Lake under federal and state law. Silver Lake's active and knowing participation in any alleged anticompetitive agreement is a necessary element of both claims. Yet the complaint does not assert that Silver Lake had knowledge of any purported collusive agreement. Neither does it assert that Silver Lake participated in any conversations—whether in person, telephonic, or electronic—about the alleged agreement.

Without facts to support its antitrust claims against Silver Lake, Plaintiff bases its claims on two legally impermissible theories. First, Plaintiff seeks to hold Silver Lake liable for the alleged acts of its principal, Chesapeake. Agency law is clear, however, that the knowledge and actions of the principal are not imputed to the agent. Second, the complaint attempts to cloak Silver Lake in guilt by association. But Plaintiff cannot circumvent its pleading burden simply by using the generic term "defendants" before certain allegations or by inferring liability based on routine business dealings with an alleged conspirator. Accordingly, for the reasons stated

below, as well as for the reasons set forth in Chesapeake's motion to dismiss, all claims against Silver Lake should be dismissed for failure to state a claim.

## BACKGROUND

In the spring of 2010, "speculation heightened" about the commercial viability of oil and gas plays in Michigan, which included land owned by Plaintiff. Compl. ¶¶ 4, 19, 34. Among other things, this speculation led participants at the State of Michigan's May 4, 2010 lease auction to pay much higher than usual prices for mineral rights. Compl. ¶ 2. As a result of the prices paid at the auction, Plaintiff "sought" out oil and gas companies to lease its land. Compl. ¶ 44.

One of the oil and gas companies to which Plaintiff reached out was Chesapeake. On May 20, 2010, Plaintiff sent an email to Chesapeake inquiring if Chesapeake was interested in leasing Plaintiff's mineral rights. Compl. ¶ 92. One of Chesapeake's leasing agents in Michigan, Silver Lake, was notified of the inquiry. Compl. ¶¶ 21, 92. Silver Lake, which assisted Chesapeake with the acquisition of leases for mineral rights in Michigan, responded by letter to Plaintiff's inquiry on June 9, 2010. Compl. ¶¶ 21, 29; Compl. Ex. 8. Over the next six weeks, Silver Lake, on behalf of Chesapeake, negotiated with Plaintiff and its counsel over a potential lease for Plaintiff's land. Compl. ¶¶ 94-101. Ultimately, before the two sides reached an agreement on the terms of a lease, Silver Lake informed Plaintiff that it would not be consummating a lease. Compl. ¶ 102.

According to the complaint, "[w]hile Plaintiff was entertaining bids" for its land, such as the negotiations with Silver Lake, "top officials at Chesapeake and Encana were hatching a scheme to depress prices for mineral rights interests in northern Michigan." Compl. ¶ 45. This purported collusive scheme is allegedly "revealed" by e-mails solely "between executives at Chesapeake and Encana." Compl. ¶ 46. The "objective of the negotiations was to remove the

tug of war between the two competitors [Chesapeake and Encana]." Compl. ¶ 58. As part of the alleged anticompetitive plan, Chesapeake and Encana "started discussions" about jointly acquiring oil and gas leases on acreage in northern Michigan to be shared 50/50 between the two companies and exchanged drafts of a non-binding area of mutual interest agreement between the two companies alone, which ultimately was never consummated. Compl. ¶¶ 45-63. Allegedly, through this exchange of drafts between the two companies, "Chesapeake and Encana coordinated their bids." Compl. ¶ 60. The complaint does not allege that Silver Lake employees were included on either the e-mails that "revealed" the allegedly collusive scheme between Chesapeake and Encana or the e-mails through which draft agreements were exchanged. The complaint also does not allege that Silver Lake ever communicated with Encana through any medium.

Based on these facts, Plaintiff asserts seven causes of action against Silver Lake. This brief addresses Counts I, II, VI, and VII.[1] Counts I and II assert claims under the Sherman Antitrust Act and Michigan Antitrust Reform Act, respectively. Count VI asserts claims for fraud in the inducement and fraudulent misrepresentation, and Count VII alleges a secondary liability claim for civil conspiracy based on the alleged wrongdoing in Plaintiff's other causes of action.[2]

**ARGUMENT**

I. **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Courie v. Alcoa Wheel &*

---

[1] The complaint mistakenly titles two separate causes of action as "Count VI." For purposes of this motion, Silver Lake refers to the second of those two claims, civil conspiracy, as Count VII.
[2] Silver Lake hereby incorporates and joins the arguments in Chesapeake's Brief in Support of Its Motion to Dismiss, which provides additional, independent bases for dismissing the causes of action for fraudulent inducement and fraudulent misrepresentation, which are further discussed herein, як well as bases for dismissing Plaintiff's claims for breach of contract, unjust enrichment, breach of the covenant of good faith and fair dealing, and tortious interference with a business relationship, which are not addressed in this brief.

- 3 -

*Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is "plausible on its face" only if the "plaintiff pleads 'factual content' that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Peterson v. Foco*, No. 1:09-cv-233, 2009 WL 2337153, at *4 (W.D. Mich. July 16, 2009) (quoting *Iqbal*, 556 U.S. at 678). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" are insufficient to render allegations plausible. *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

The importance of requiring specific, non-conclusory allegations is heightened in antitrust cases because of the "potentially enormous" costs of discovery. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "The essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent dismissal of the complaint on a defendant's 12(b)(6) motion." *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 530 (6th Cir. 2001).

The alleged facts likewise must be specific to *each* defendant; the use of the "global term defendants to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy is not sufficient under *Twombly*." *Banxcorp v. Apax Partners, L.P.,* No. 10-CV-4769, 2011 WL 1253892, at *4 (D.N.J. Mar. 28, 2011) (alterations, citations, internal quotation marks omitted); *accord In re Elevator Antitrust Litig.,* 502 F.3d 47, 50-51 (2d Cir. 2007) (general allegations "without any specification of any particular activities by any particular defendant . . . . do[] not supply facts adequate to show illegality" (internal quotation marks omitted)).

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST SILVER LAKE FOR VIOLATION OF THE SHERMAN ACT AND THE MICHIGAN ANTITRUST REFORM ACT

Plaintiff's antitrust claims against Silver Lake should be dismissed. The complaint fails to allege any facts demonstrating that Silver Lake actively and knowingly participated in an antitrust agreement with Chesapeake and Encana. To properly state an antitrust claim[3] against Silver Lake, Plaintiff must allege specific facts establishing that Silver Lake consciously committed to, and actively and knowingly engaged in, an anticompetitive agreement. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (antitrust plaintiff must show that defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective"); *Brown v. Donco Enters., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986) ("Individual liability under the antitrust laws can be imposed only where corporate agents are actively and knowingly engaged in a scheme designed to achieve anticompetitive ends."); *see also In re Se. Milk Antitrust Litig.*, 801 F. Supp. 2d 705, 737 (E.D. Tenn. 2011) ("[I]n the Sixth Circuit, to meet the standard for individual liability [of an agent], i.e., active and knowing participation, the evidence must show that the defendant [agent] exerted influence over corporate decisions to the point that his influence shaped corporate intentions." (citing *Brown*, 783 F.2d at 646)). Plaintiff must make this showing through either "direct or circumstantial evidence that reasonably tends to prove that the [defendant] had a conscious commitment to a common scheme . . . ." *Monsanto*, 465 U.S. at 764 (internal quotation marks omitted). Moreover, the facts alleged must "plausibly suggest[]," rather than be "merely consistent with" Silver Lake's

---

[3] The federal antitrust count (Count I) and the Michigan state antitrust count (Count II) rely on the same facts and assert the same legal theories under two laws: the Sherman Act, 15 U.S.C. § 1, and the Michigan Antitrust Reform Act (MARA), M.C.L. § 445.772. *See* Compl. ¶¶ 81-90. MARA "is interpreted consistent with the Sherman Act." *Perceptron, Inc. v. Sensor Adaptive Machs. Inc.*, 221 F.3d 913, 919 n.6 (6th Cir. 2000). Courts therefore have "applied the same analysis to claims under the Sherman Act and MARA." *Midwest Auto Auction, Inc. v. McNeal*, No. 11-CV-14562, 2012 WL 3478647, at *5 n.5 (E.D. Mich. Aug. 14, 2012); *see also Blair v. Checker Cab Co.*, 558 N.W.2d 439, 442 (Mich. Ct. App. 1996) ("[T]he MARA and the Sherman Act require similar evidence of concerted action or combination."). The same analysis, therefore, directs dismissal of both claims.

active and knowing participation.  *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 908 (6th Cir. 2009).

Importantly, Plaintiff may not rely on Silver Lake's status as agent for Chesapeake to satisfy its pleading burden.  A principal's knowing involvement in an alleged antitrust conspiracy cannot be imposed on its agent, as a matter of law, absent the agent's separate, knowing involvement in the conspiracy.  *U.S. v. $6,976,934.65, Plus Interest Deposited into Royal Bank of Scot. Int'l Account No. 2029–56141070, Held in Name of Soulbury Ltd.*, 554 F.3d 123, 129 (D.C. Cir. 2009) ("Notice of facts that a principal knows . . . is not imputed downward to an agent." (internal quotation marks and brackets omitted)).  The law, therefore, "protects the agent from the legal consequences of facts that only the principal knows or has reason to know." Restatement (Third) of Agency § 5.03, cmt. g (2006).  In other words, an inference that Silver Lake, purely by virtue of being Chesapeake's agent, had knowledge of Chesapeake's alleged actions and agreements would "contradict[] established agency law, which dictates that while the knowledge of the agent is imputed to the principal, the converse is not true."  *Schmitt v. FMA Alliance*, 398 F.3d 995, 997 (8th Cir. 2005); *see also Ago v. Begg, Inc.*, 705 F. Supp. 613, 617-18 (D.D.C. 1988) ("While the law of agency often holds a principal responsible for knowledge known by his agent . . . it sensibly does not hold agents responsible for knowledge known only by the principal."), *aff'd*, 911 F.2d 819 (D.C. Cir. 1990).  Accordingly, to satisfy its pleading burden for claims against Silver Lake, Plaintiff may derive no benefit from allegations solely as to Chesapeake.

**A.     The Complaint Does Not Allege Active And Knowing Participation by Silver Lake In Any Conspiracy**

Stripped of the allegations solely as to Chesapeake, the complaint lacks any factual allegations that show, or provide a basis to infer, that Silver Lake "had a conscious commitment

- 6 -

to" participate in any alleged agreement with an unlawful objective. Without such allegations, there is no legal basis to hold Silver Lake liable for violations of the antitrust laws. Critically, Plaintiff does not plead any communications or meetings between Silver Lake and either of the other defendants about any alleged antitrust agreement. This notable omission is consistent with Plaintiff's presentation of the facts, which consist of allegations of "[n]umerous emails *between executives at Chesapeake and Encana*," (Compl. ¶ 46; Compl. ¶¶ 45-70 (emphasis added)); exchanges of draft agreements between Chesapeake and Encana, (Compl. ¶¶ 61-62); and two Reuters' news articles discussing only Chesapeake and Encana (*see, e.g.,* Compl. ¶¶ 62, 75; Compl. Ex. 6 & 7). Silver Lake was neither a party to nor involved in any way with a single one of these purportedly "collusive" communications. The complaint asserts nothing to the contrary. In fact, in a lengthy section titled "The Conspiracy," the complaint sets forth the alleged background to and execution of the purported anticompetitive agreement. Compl. ¶¶ 32-63. Tellingly, those thirty-one paragraphs do not include a single reference to, never mind an allegation concerning, Silver Lake.

The only factual allegations in the complaint identifying Silver Lake, not surprisingly, describe activities confined to its limited role as Chesapeake's Michigan leasing agent, divorced from the conspiracy allegations as to Chesapeake and Encana. *See e.g.*, Compl. ¶ 71 ("In September of 2010, Chesapeake's agents, RedSky Land, LLC ("RedSky") and Silver Lake, retained several title agents and landmen . . . ."); Compl. ¶ 93 ("On June 9, 2010, Al Couturier, agent for Silver Lake, sent Plaintiff a 'Solicitation Letter.'"); Compl. ¶ 97 ("On June 17, 2010, Silver Lake prepared and submitted to Plaintiff a Letter of Intent . . . ."). Plaintiff does not, because it cannot, seriously attempt to connect these allegations about Silver Lake to any alleged

- 7 -

antitrust conspiracy. Instead, it merely asserts, in a single paragraph and without explanation, that:

> In September of 2010, Chesapeake's agents, RedSky Land, LLC ("RedSky") and Silver Lake, retained several title agents and landmen for the express purpose of carrying out Defendants' collusive strategy of voiding acquired oil and gas leases, thereby avoiding paying prices at the market level set by the May state auction. This has been confirmed by Joe McFerron, affiliated with both RedSky and Silver Lake, who admits in an email communication that they were instructed to fail all leases.

Compl. ¶ 71.

These allegations are inadequate to give rise to a plausible inference that Silver Lake actively and knowingly participated in any antitrust conspiracy. Even here, Plaintiff does not allege that Silver Lake somehow knew of "Defendants' collusive strategy," and the assertion that Silver Lake was instructed to "fail all leases" does not provide a basis for inferring such knowledge. In fact, Plaintiff's allegation is completely consistent with Silver Lake's role as a leasing agent following the instructions of its principal Chesapeake. Moreover, there are numerous legitimate business reasons why an oil and gas company might instruct its agent to discontinue leasing efforts and "void" leases—*e.g.*, poor geological results, changed economic circumstances, public information about competitor activity—all of which are consistent with normal competition. Silver Lake would have had no reason to suspect a different motive for this instruction from Chesapeake, and Plaintiff alleges none. Allegations such as these, of "conduct that is as consistent with permissible competition as with illegal conspiracy [do] not, without more, support even an inference of conspiracy." *City Commc'ns, Inc. v. City of Detroit*, 695 F. Supp. 911, 914 (E.D. Mich. 1988), *aff'd*, 888 F.2d 1081 (6th Cir. 1989) (quoting *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 597 n.21 (1986)).

Furthermore, even if Silver Lake happened to further the object of the alleged conspiracy by "fail[ing] all leases," but did so unknowingly, it cannot be held liable as a participant in the

- 8 -

scheme. *See United States v. Falcone*, 311 U.S. 205, 210 (1940). Because the complaint does not include a single allegation that Silver Lake knew of any alleged anticompetitive scheme, the assertions in paragraph 71 are insufficient to establish a claim.

### B. Plaintiff Cannot Rely On Guilt By Association To Satisfy Its Pleading Burden As To Silver Lake

Boiled down to their essence, Plaintiff's antitrust claims against Silver Lake are merely claims for "guilt by association." But courts routinely reject similar attempts to ascribe "guilt by association" based on a party's routine business dealings with other alleged antitrust conspirators, particularly where, as here, the Plaintiff urges "inferences to be drawn from the evidence which are unfair and strained to the point of not being justified or reasonable." *In re Se. Milk Antitrust Litig.,* 801 F. Supp. 2d at 739 (finding that antitrust claims asserted against company CFO failed because plaintiffs showed only that he "'participated,' . . . in the financial planning and arrangements related to those acts" but failed to show that "he did anything more than would have been expected from a chief financial officer of any corporation" such that he could have "actively and knowingly participated in an anticompetitive scheme"); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 790 F. Supp. 2d 106, 116 (S.D.N.Y. 2011) ("[A]scribing guilt based on association" when the defendant has simply participated in an industry or a transaction tainted by the anticompetitive conduct is *not* sufficient to state a claim for antitrust conspiracy); *In re Appraiser Found. Antitrust Litig.*, 867 F. Supp. 1407, 1419 (D. Minn. 1994) ("Plaintiffs were required to prove concerted action not mere guilt by association." (internal quotation marks omitted)), *aff'd sub nom. Nat'l Ass'n of Review Appraisers & Mortg. Underwriters, Inc. v. Appraisal Found.*, 64 F.3d 1130 (8th Cir. 1995); *see also Twombly*, 550 U.S. at 567 n.12 (observing that an allegation of membership in the same guild does not support a finding of antitrust conspiracy); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 821 (3d Cir. 1982)

("[T]here is a real danger in a[n antitrust] conspiracy trial involving numerous defendants that the jury may find a particular defendant guilty merely because of his association with the other defendants.") (citing *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 195 (3d Cir. 1970)). The complaint lacks factual allegations to establish that Silver Lake "did anything more than would have been expected from" a leasing agent.

Claims of guilt by association fare no better when a complaint treats individual defendants as an undifferentiated collective. Plaintiff makes use of that tactic here. The complaint lumps the three defendants together in the paragraphs specifically addressing Counts I and II, alleging that all "defendants, as co-conspirators" engaged in the alleged antitrust conspiracy. *See* Compl. ¶¶ 81-90. Allegations of this sort are insufficient to plead Silver Lake's active and knowing involvement in an antitrust conspiracy and "represent precisely the type of naked conspiratorial allegations rejected by the Supreme Court in *Twombly*." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d at 905. Plaintiff "cannot escape [its] burden of alleging that *each* defendant participated in or agreed to join the [antitrust] conspiracy by using the term 'defendants' to apply to numerous parties without any specific allegations as to [certain] individual . . . defendant[s]." *Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n,* 458 F. Supp. 2d 474, 485 (E. D. Mich. 2006), *aff'd*, 524 F.3d 726 (6th Cir. 2008); *see also*, *e.g.*, *In re Travel Agent Comm'n Antitrust Litig.,* 583 F.3d at 905 (upholding dismissal of antitrust claims against certain defendants because complaint failed to "specify how these defendants [were] involved in the alleged conspiracy"); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 515-16 (S.D.N.Y. 2009) (dismissing antitrust claims against certain defendants because the complaint made "no specific factual averment of [defendants'] involvement in the alleged conspiracy").

Plaintiff has failed to plead any facts that would support, directly or indirectly, a plausible inference of Silver Lake's own active and knowing participation in an alleged antitrust conspiracy with Chesapeake and Encana. Silver Lake's status as Chesapeake's agent does not permit Plaintiff to impute the acts or knowledge of Chesapeake to Silver Lake. Thus, the antitrust claims against Silver Lake must rise or fall solely on the basis of specific factual allegations as to Silver Lake. Under that standard, they fall. The allegations against Silver Lake show only that it acted as Chesapeake's leasing agent and do not demonstrate, or leave room to infer, that Silver Lake had a "conscious commitment" to any alleged conspiracy. Accordingly, Plaintiff's antitrust claims (Counts I and II) against Silver Lake must be dismissed.

A recent decision from this District in *NorthStar Energy, LLC v. Encana Corporation, et al.*, No. 1:13-cv-00200, does not suggest a contrary result. That case involves antitrust claims based on a similar theory of collusive activity between Chesapeake and Encana and asserts those claims against a different Michigan leasing agent of Chesapeake, O.I.L. Niagaran ("OILN"). The court in *NorthStar* recently denied a motion to dismiss the antitrust claims against OILN. *Id.*, Opinion & Order, Dkt. No. 37, at 24. The decision does not counsel against dismissing Plaintiff's antitrust claims against Silver Lake; rather, it demonstrates the deficiency in the allegations here.

The court in *NorthStar* recognized that absent allegations that OILN knew of an alleged conspiracy between Chesapeake and Encana, the antitrust claims could not survive. *Id.* at 22-23. The knowledge element, the court held, was sufficiently pleaded because Plaintiff exhibited an e-mail conversation between executives of Chesapeake and Encana in which the alleged collusive scheme was discussed. *Id.* at 23-24. An employee of OILN was included on certain of the relevant e-mails, allowing the court to identify "a plausible allegation that OILN knew about the

alleged Chesapeake-Encana agreement." *Id*. at 23.  The court did not discuss any other allegations rising to the level of a "plausible inference" of knowledge by the agent.

Here, by contrast, Plaintiff has failed to allege a single fact that could create an inference that Silver Lake had knowledge of the alleged collusive scheme.  Certainly, the complaint does not include allegations that Silver Lake participated in communications between Chesapeake and Encana about their alleged agreement, which saved NorthStar's claims against OILN.

### III.  PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD IN THE INDUCEMENT AGAINST SILVER LAKE

For the reasons stated in Chesapeake's motion to dismiss, which Silver Lake incorporates by reference in its entirety, Plaintiff fails to state claims for breach of contract (Count III), unjust enrichment (Count IV), tortious interference (Count V), and fraud (Count VI) against Silver Lake.  In addition, Plaintiff's claim for fraud in the inducement must be dismissed as to Silver Lake for additional, independent reasons.

The fraud in the inducement claim fails as against Silver Lake for the independent reason that the complaint lacks any allegations that would support an inference that Silver Lake knew of the discussions between Chesapeake and Encana, *see supra* pp. 6-9, such that Silver Lake also could have "tie[d] up the Plaintiff's mineral rights and then determine[d] at a later time whether to honor or disregard their obligation."  Compl. ¶ 134.  Further, even if Plaintiff had sufficiently pleaded such knowledge and intent on Silver Lake's part, the allegations would still be insufficient to establish that Silver Lake knew representations about Chesapeake's future intent to pay Plaintiff $1,800 per acre were false at the time Silver Lake made the statement on Chesapeake's behalf.  As explained in Chesapeake's motion to dismiss, Plaintiff's own theory is that until Chesapeake and Encana reached the alleged antitrust agreement, which was after Silver Lake made the representation in question, the two companies in fact were in fierce competition.

*See* Chesapeake Mot. to Dismiss, at 25. Plaintiff's fraud claim against Silver Lake fails not only Rule 9(b)'s specificity requirement, but even the more lax standards of Rule 8.[4] *See* Fed. R. Civ. P. 9(b); Fed. R. Civ. P. 8.

## IV. PLAINTIFF FAILS TO STATE A CLAIM AS AGAINST SILVER LAKE FOR CIVIL CONSPIRACY

Because Plaintiff's antitrust claims fail as a matter of law as to Silver Lake, and because Plaintiff's other claims against Silver Lake fail as a matter of law for the reasons set forth in Chesapeake's motion to dismiss and in Section III above, the civil conspiracy claims against Silver Lake must also be dismissed. Civil conspiracy is a theory for establishing secondary liability, and therefore requires underlying wrongful conduct to state a claim. *See Future Now Enters., Inc. v. Foster*, 860 F. Supp. 2d 420, 429 (E.D. Mich. 2012) (civil conspiracy claim fails as a matter of law unless the plaintiff establishes a separate, actionable tort), *aff'd*, 525 F. App'x 395 (6th Cir. 2013). Because Plaintiff has failed to allege underlying wrongful conduct as to Silver Lake, whether an agreement in violation of the antitrust laws, a tort claim, or fraud, the civil conspiracy claim should be dismissed.

---

[4] To the extent Plaintiff's fraudulent misrepresentation claim turns on the allegations that Silver Lake and Chesapeake represented that they wanted to make Plaintiff a "very attractive offer," Compl. ¶ 132(d); "the best offer available," *id.* ¶ 132(e); to be the "last bidder," *id.* ¶ 134; and "that Plaintiff would be paid $1,800 per acre for their mineral rights," *id.* ¶ 138, that claim must also be dismissed as to Silver Lake because, as noted above, Plaintiff fails to allege that Silver Lake acted with knowledge of any alleged collusive scheme between Chesapeake and Encana such that it could have possessed the *scienter* necessary to support a fraud claim.

- 14 -

## CONCLUSION

For the foregoing reasons, as well as those set forth in Chesapeake's brief, all of Plaintiff's claims against Silver Lake should be dismissed.

| | |
|---|---|
| May 29, 2014 | By: /s/ Molly S. Boast |
| | Molly S. Boast |
| | Jason D. Hirsch |
| | Hanna A. Baek |
| | Ryan D. Tansey |
| | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | 7 World Trade Center |
| | 250 Greenwich Street |
| | New York, NY 10007 |
| | Tel. (212) 230-8800 |
| | Fax (212) 230-8888 |
| | molly.boast@wilmerhale.com |
| | jason.hirsch@wilmerhale.com |
| | hanna.baek@wilmerhale.com |
| | ryan.tansey@wilmerhale.com |