# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE TENEYCK MINERAL TRUST,
BY C. ANDREW TENEYCK, TRUSTEE,

            Plaintiff,

v

CHESAPEAKE ENERGY CORPORATION,
SILVER LAKE ENERGY, LLC,
ENCANA CORPORATION, and
ENCANA OIL & GAS (USA) INC.

            Defendants.

_____/

Case No. 1:14-cv-00201-GJQ

Judge Gordon J. Quist

**ENCANA'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT V OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

Brian J. Masternak (P57372)
Charles N. Ash, Jr. (P55941)
Lance R. Zoerhof (P63980)
David R. Whitfield (P73352)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
bmasternak@wnj.com
cash@wnj.com
lzoerhof@wnj.com
dwhitfield@wnj.com
616.752.2000

Susan L. Hlywa Topp (P46230)
TOPP LAW PLC
213 Main St. Gaylord, MI 49734
susan@topplaw.com
989.731.4014

*Co-Counsel for Plaintiff*

Gregory L. Curtner (P12414)
Robert J. Wierenga (P59785)
Frederick R. Juckniess (P64032)
Jessica A. Sprovtsoff (P70218)
SCHIFF HARDIN LLP
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
Telephone:  (734) 222-1500
gcurtner@schiffhardin.com
rwierenga@schiffhardin.com
rjuckniess@schiffhardin.com
jsprovtsoff@schiffhardin.com

*Counsel for Defendants Encana Corporation and Encana Oil & Gas (USA) Inc.*

Molly S. Boast
Sanket J. Bulsara
WILMER CUTLER PICKERING HALE & DORR, LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Molly.Boast@wilmerhale.com
Sanket.Bulsara@wilmerhale.com
212-230-8800

*Attorneys for Defendants Chesapeake Energy Corp & O.I.L. Niagaran, L.L.C.*

## **TABLE OF CONTENTS**

Index of Authorities ................................................................................................ ii

I.      TenEyck Does Not Allege a Sufficiently Definitive Business Expectancy ....................... 1

      A.      TenEyck Cannot Distinguish NorthStar without Rewriting its Complaint  .............. 1

      B.      Silver Lake/Chesapeake:  Is Not Pled as a Business Expectancy in Count V ........... 2

      C.      Energy West/Encana:  Encana Cannot Interfere with Its Own "Offer" ..................... 3

      D.      Atlas:  The Single May 14, 2010 Email from Bishop Land
            Services Does Not Create a Valid Business Expectancy ........................................... 4

II.     TenEyck Failed to Allege Encana's Knowledge of the "Three Offers" ............................ 5
    4

III.    TenEyck's Explanation of Encana's "Interference" Further Dooms Its Claim ................. 6

Conclusion ........................................................................................................... 9

i

# INDEX OF AUTHORITIES

## CASES

*Beirut Traders Co. v. Neiman Marcus Group, Inc. Maersk, Inc.*,
   2009 WL 3460674 (E.D. Mich. 2009)...........................................................................8

*Centroni Ass'n, Inc. v. Tomblinson, Harburn Assoc, Architects & Planners, Inc.*,
   492 Mich. 40, 821 NW2d 1 (2012)...........................................................................5

*Experts LLC v. JPMorgan Chase & Co.*,
   13-CV-12550, 2013 WL 4487508 (E.D. Mich. Aug. 20, 2013).................................5

*Maiberger v. City of Livonia*,
   724 F. Supp. 2d 759 (E.D. Mich. 2010)....................................................................3

*New York Carpet World, Inc. v. Grant*,
   912 F.2d 463 (4th Cir. 1990) ...................................................................................2

*NorthStar Energy LLC v. Encana Corp.*,
   Case No. 1:13-cv-00200 ..............................................................................1, 2, 8

*Trepel v. Pontiac Osteopathic Hosp.*,
   135 Mich. App. 361, 354 NW2d 3412 (1984)..........................................................5

*Weitting v. McFeeters*,
   104 Mich. App. 188, 304 N.W.2d 525 (1981)..........................................................6

In its motion to dismiss, Encana demonstrated that TenEyck has failed to plead facts sufficient to establish (1) a valid business expectancy, (2) known by Encana and (3) with which Encana wrongfully and maliciously interfered.  TenEyck's opposition offers two broad responses to this showing, neither of them sufficient.  First, TenEyck attempts to revive the argument, already rejected by the Court in *NorthStar*, that a generic "competitive bidding process" can satisfy its requirement to establish a valid business expectancy.  TenEyck also argues that its complaint does, in fact, allege three specific "offers" with which Encana supposedly interfered.  These arguments are unavailing, because TenEyck's complaint simply does not say what TenEyck's opposition brief claims it says:

> ***No allegations of a valid business expectancy***:  Although TenEyck now claims that Encana interfered with specific "offers," the Complaint does not contain the facts that TenEyck needed to allege in order for those offers to qualify as "business expectancies" sufficient to support TenEyck's tortious interference claim;
>
> ***No allegations that Encana knew about any expectancy***:  TenEyck has failed to allege facts demonstrating that Encana had requisite knowledge of TenEyck's newly-identified "offers;" and
>
> ***No allegations that Encana interfered***:  TenEyck has failed to allege facts demonstrating that Encana did anything to interfere with TenEyck's ability to accept these newly-identified offers, let alone that Encana acted wrongfully or maliciously in doing so.

Each one of these inadequacies independently warrants dismissal.

## I.      TenEyck Does Not Allege a Sufficiently Definitive Business Expectancy

### A.  TenEyck Cannot Distinguish *NorthStar* without Rewriting its Complaint

Encana already demonstrated that TenEyck's tortious interference count asserts only that TenEyck missed out on the competitive bidding process – the same sort of inadequate allegation that doomed the similar NorthStar claim.  *NorthStar Energy LLC v. Encana Corp. et al.*, Case No. 1:13-cv-00200, Dkt. 37 at 20 ("competitive bid process does not rise to the requisite level of

a business expectancy"); *see also New York Carpet World, Inc. v. Grant*, 912 F.2d 463 (4th Cir. 1990).

In an attempt to avoid the controlling *NorthStar* ruling, TenEyck now suggests that its claims are actually based on three *specific* offers – "Atlas, Energy West, and Silver Lake" – each of which TenEyck "would have accepted" but for Encana's interference (Dkt. 17 at 13).[1]  This argument fails because TenEyck needs to rewrite its Complaint in order to raise it.

Contrary to TenEyck's opposition argument, its Complaint alleges:  that the interference prevented TenEyck "from entertaining bids from other purchasers" (Dkt. 1 at ¶ 7); that TenEyck "forbore from negotiating with and/or turned down lease offers made to it by Defendants' competitors" (Dkt. 1 at ¶ 122); and that TenEyck was damaged by "missing the opportunity to lease its minerals to another company."  (Dkt. 1 at ¶ 126).  TenEyck's Complaint therefore alleges interference with its participation in the solicitation and bidding process *generally*, and not interference with its ability to accept any *specific* and well-pled "offer."  These are the same sort of allegations that were rejected by the Court in *NorthStar*, and they should be dismissed here as well.  (*See* Dkt. 7 at 7-9).

Moreover, TenEyck's claim would be subject to dismissal even if Court accepted TenEyck's (incorrect) argument that the Complaint alleges interference with three "specific offers."  As we explain below, TenEyck's arguments on this point fail even if taken on their own terms.

### B. Silver Lake/Chesapeake:  Is Not Pled as a Business Expectancy in Count V

TenEyck *may not* now argue that it had a valid business expectancy with Silver Lake (Chesapeake's agent) because it *did not* allege that fact in Count V of its Complaint.  (Dkt. 1 at

---

[1] In response to Chesapeake's Motion, TenEyck argues alternatively that "TenEyck would have accepted the pending offers with Energy West or Atlas if Chesapeake had not interfered."  Dkt. 18 at 23.

¶¶ 121, 123) ("Plaintiff had a business relationship or expectancy with Atlas and Energy West"). There are no allegations in Count V regarding an offer by Chesapeake or Silver Lake.  TenEyck cannot avoid dismissal by relying on facts it simply failed to plead.[2]

### C.    Energy West/Encana:  Encana Cannot Interfere with Its Own "Offer"

TenEyck next claims that it had a valid business expectancy with Energy West.  But TenEyck now acknowledges that "Energy West" was Encana's agent – a fact it omitted from its Complaint.  That admission is fatal to TenEyck's tortious interference claim, because as a matter of law, a defendant cannot interfere with its own business relationship.  *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 781 (E.D. Mich. 2010) ("party to a contract cannot logically 'interfere' with it.").[3]  Because TenEyck's "Energy West" theory depends on the legally impermissible notion that Encana tortiously interfered with its own offer to TenEyck, it provides no support for TenEyck's tortious interference claim.

---

[2]  This failure should not be ignored or excused as a permissible oversight.  If TenEyck had actually alleged that Encana interfered with TenEyck's offer from Silver Lake, Encana could have raised an entirely different ground for dismissing TenEyck's claim: Encana could not have tortiously interfered with an offer that TenEyck ***actually accepted***.

[3] TenEyck's claim based on this "business expectancy" was already questionable since TenEyck cites Exhibit 12 as the "offer" but that Exhibit is an email from JMStocking@aol.com, and it only addresses the TenEyck Trust's acreage indirectly: "Are you also representing the Andrew TenEyck Trust adjoining this property?" This purported "offer" for some other acreage does not suffice to create a "business expectancy" for the TenEyck Trust.

D.    **Atlas:  The Single May 14, 2010, Email from Bishop Land Services Does Not Create a Valid Business Expectancy**

TenEyck is left with just one theory of interference – its "expectancy" of accepting Atlas' offer.  TenEyck alleges that Exhibit 5 to the Complaint is a May 14, 2010, "written offer" from Atlas, but Exhibit 5 is an email from Bishop Land Service Inc.  (Dkt. 1-5, at 2).  TenEyck does not allege that the offer was authorized by Atlas, or that the offer was valid, complete, or adequate.  Nor does TenEyck acknowledge Bishop's statement that paperwork, not yet drafted, would be required in order to complete any agreement.  *Id.*  The complaint does not contain sufficient facts to transform TenEyck's inaccurate allegations regarding the Bishop email into a sufficiently certain "business expectancy" with Atlas.

Moreover, even if TenEyck had alleged a valid "business expectancy" in receiving an offer from Atlas on May 14, 2010, that expectancy was extinguished when TenEyck expressly rejected that "offer" and solicited other bids.  (Dkt. 1 at ¶ 44; Dkt. 17 at 8) ("Knowing that the similar leases at the recent May auction sold for more than three times that amount, TenEyck responded that it thought $750 was on the low end.")  TenEyck's admitted rejection of the "Atlas offer" in May eliminates any "reasonable expectation" that TenEyck could have accepted the same "offer" in June or July, or could have otherwise had any reasonable expectation of entering into a wholly separate agreement with Atlas at that time.

Even if TenEyck had not expressly rejected the "Atlas offer," TenEyck does not allege that the May 14th offer was renewed in June or July during the period of Encana's supposed "interference" or that the offer remained open, and free to accept, for months after Greg Bishop's single email.  (Dkt. 17 at 8).  Indeed, by arguing that a single email created a "business expectancy" with Atlas of indefinite duration – one that TenEyck supposedly could have accepted at any time – TenEyck is engaging in exactly the type of "wishful thinking" that courts

4

have found renders alleged business expectancies legally insufficient. *Centroni Ass'n, Inc. v. Tomblinson*, *Harburn Assoc, Architects & Planners, Inc.*, 492 Mich. 40, 45, 821 N.W.2d 1, 3 (2012) (quoting *Trepel v. Pontiac Osteopathic Hosp.*, 135 Mich. App. 361, 377, 354 N.W.2d 3412 (1984))

## II.    TenEyck Failed to Allege Encana's Knowledge of the "Three Offers"

Dismissal of a tortious interference claim is appropriate where there is no allegation of the defendant's knowledge of the business expectancy. *Experts LLC v. JPMorgan Chase & Co.*, 13-CV-12550, 2013 WL 4487508, *4 (E.D. Mich. Aug. 20, 2013) (dismissing tortious interference claim against JPMorgan where no allegation of knowledge of contracts).[4]   TenEyck tacitly admits that it has not alleged that Encana had actual knowledge of Atlas' offer to TenEyck, but tells the Court that it should *infer* that factual allegation anyway, despite TenEyck's pleading failure, based on a strained reading of the Complaint's paragraphs 7, 46, 92, 93, 95, and 104.  (Dkt. 17 at 21).  None of these paragraphs provide a proper basis for the Court to "infer" that TenEyck has alleged Encana's knowledge of Atlas' offer to TenEyck.  At best, these allegations suggest that Encana could have known that TenEyck had other opportunities to participate in the competitive bidding process, not that Encana had knowledge of any specific business relationships or expectancies.

Notably, in its opposition, TenEyck does not even argue that the Court can simply assume the allegations that would be required to withstand dismissal of this claim: that Encana had actual knowledge of the "three specific offers."  TenEyck's Complaint does not include any well-pled allegation of Encana's knowledge of Atlas' "offer" and, therefore, must be dismissed.

---

[4] The Court explained: "[T]he allegations are vague with respect to how Chase induced a breach of contract between Experts and its customers.  In any event, Chase could not have interfered with the contracts of which it had no knowledge."

### III.    TenEyck's Explanation of Encana's "Interference" Further Dooms Its Claim

Even accepting all of TenEyck's allegations as true, Encana did nothing to prevent TenEyck from accepting Atlas' May 14th offer, and it is impossible for Encana to have interfered with the Atlas offer later because TenEyck had already rejected it.  TenEyck alleges that the reason that it rejected the offer as too low was because it knew "the bonuses that were paid per acre at and in the wake of the State's May auction."  (Dkt. 1 at ¶ 44).  As a result, "Plaintiff sought bids from other oil and gas companies" while telling Atlas its offer was too low.  (*Id.*; Dkt. 17 at 8).  There are no allegations that TenEyck was ever contacted by Atlas after May 14, 2010.  TenEyck must allege *some* interference by Encana after the May 14th "offer" and before the soon-thereafter rejection by TenEyck in order to sufficiently plead that Encana's actions had any impact on TenEyck's rejection of Atlas' offer.

Further, TenEyck's allegations of what actions constitute the "interference" in Count V are seemingly descriptive of TenEyck's alleged dealings with Chesapeake, but have no apparent logical connection to TenEyck's alleged dealings with Encana.  For example, TenEyck alleges:

> Defendants intentionally interfered with the Plaintiff's business relationship or expectancy by manipulation of the market by offering Plaintiff large bonus amounts, effectively pricing the competition out of the market, and then defaulting on their obligation to pay.

(Dkt. 1 at ¶ 125).  There is no factual allegation in the Complaint that (1) Encana made a bad-faith offer to TenEyck,[5] and then (2) "default[ed] on their obligation to pay." (Dkt. 1 at ¶ 125).  Indeed, there is no allegation that Encana owed any "obligation to pay" TenEyck anything.

---

[5] To the contrary, TenEyck relies on the Encana "offer" as a legitimate "business expectancy" that Chesapeake interfered with.  Even if the Encana offer had been alleged as the act of tortious interference, making a better offer than one's competitor will not suffice as proof of an improper interference. *Weitting v. McFeeters,* 104 Mich. App. 188, 197, 304 N.W.2d 525 (1981).  Moreover, Encana's "offer" was made on or about June 22, according to TenEyck.  (Dkt. 1 at ¶ 98).  TenEyck does not allege that it revived negotiations with Atlas after rejecting the May 14 offer as too low and, accordingly, Encana's offer could not have interfered with the long-dead

Upon closer scrutiny of the Complaint, it is clear that TenEyck's arguments in opposition to Encana's motion to dismiss are based on allegations that are simply not pled in the Complaint. For example, TenEyck attempts to rewrite its Complaint by arguing:

> [I]t is enough for TenEyck to allege, as it has here, that Encana's wrongful conduct 'ended a business relationship' by inducing TenEyck to terminate his negotiations with Atlas and Energy West [Encana's agent].

(Dkt. 17 at 20).  Even if TenEyck was correct regarding the applicable legal standard, it did not allege those facts in its Complaint.  In fact, not only are there no allegations that Encana induced TenEyck to end its "relationship" with Atlas, TenEyck's own allegations *contradict* this new argument.  TenEyck's Complaint specifically alleges that it was the *lease agreement* with *Chesapeake* that caused it to terminate the bidding process, not Encana's actions or any alleged antitrust conspiracy.  TenEyck alleges:

> Because of the lease agreement reached with Silver Lake and Chesapeake, Plaintiff forbore from negotiating with and/or turned down lease offers made to it by Defendants' competitors.

(Dkt. 1 at ¶ 122.)[6]  TenEyck's Complaint simply does not allege facts sufficient to demonstrate Encana's supposed interference with Atlas' offer to TenEyck, or with any other sufficiently-identified business expectancy.

Finally, TenEyck falls back upon the general assertion that its claim for tortious interference can survive merely because it also alleges an antitrust conspiracy and, as a *per se* wrongful act, the alleged antitrust conduct may serve as conduct sufficient to allege "tortious

---

Atlas offer.  Furthermore, TenEyck rejected Encana's offer when Chesapeake outbid Encana, meaning that Encana could not have interfered with anything.  (Dkt. 1 at 98).  TenEyck fails to translate this conduct into tortious interference by Encana, let alone fit it into the "interfering" antitrust conspiracy to not bid against each other.

[6] TenEyck separately alleges different facts, that it was "[a]s a result of the above representations and assurances made by Silver Lake to the Plaintiff, Plaintiff discontinued negotiations with Atlas, Energy West, and WLS."  (Dkt. 1 at ¶ 105).  Encana does not figure in this claim either.

interference" with respect to any participant in the competitive bidding process.  This Court has already rejected that theory in *NorthStar,* and it is undermined by TenEyck's own allegations in any event.  TenEyck's only alleged contact with Encana was an offer that Encana made on June 22nd.  (Dkt 1-12).  TenEyck admits that it rejected that offer on July 7th by asking Chesapeake to beat Encana's offer. (Dkt. 1 at ¶ 98). It also admits that Chesapeake did, in fact, increase its bid, resulting in the offer that TenEyck accepted. (Dkt. 1 at ¶ 99-100). The facts alleged by TenEyck show only competition between Encana and Chesapeake, not conspiracy.[7]

TenEyck does not explain how Encana and Chesapeake's competitive bidding against each other could possibly be acts of "interference" driven by an alleged agreement not to bid against each other.  TenEyck's version of the facts regarding the alleged antitrust conduct are inconsistent with any theory that Encana "interfered" with TenEyck's business expectancy with respect to Atlas.  Dismissal is appropriate where the allegations are not plausible and more likely explanations exist for alleged facts than proposed by plaintiff.  *Beirut Traders Co. v. Neiman Marcus Group, Inc. Maersk, Inc.*, 2009 WL 3460674 (E.D. Mich. 2009) (dismissal appropriate under *Iqbal* where plaintiff "has not pled sufficient facts to make its version of the facts plausible" and the more likely explanation was that defendant acted rationally instead of maliciously).  By attempting to substitute the "antitrust conduct" for any specific acts of interference undertaken by Encana, TenEyck reveals that its tortious interference claim really is based upon the competitive bidding process in general, and not upon any specific business expectancy, which this Court has already held is not sufficient to support a tortious interference claim.

---

[7]  Although TenEyck does make the generic allegation that Encana and Chesapeake agreed not bid against each other, Dkt. 17 at 6, it alleges no facts to support that claim, and it is fatally undermined by the admission of competition between Encana and Chesapeake discussed above.

## CONCLUSION

For all of the foregoing reasons, Encana respectfully submits that TenEyck's tortious interference claim against Encana should be dismissed.


Dated:  August 15, 2014                    Respectfully submitted,

                                           SCHIFF HARDIN LLP

                                           */s/  Frederick R. Juckniess*___
                                           Frederick R. Juckniess
                                           350 S. Main Street, Ste. 210
                                           Ann Arbor, MI  48104
                                           734-222-1500 (Phone)
                                           rjuckniess@schiffhardin.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2014, a copy of the foregoing was filed with the Court

using the ECF system which will send notification of such filing to all attorneys of record.


By: <u>*/s/Frederick R. Juckniess*</u>
Frederick R. Juckniess

41983-0001
AA\200100670.1