# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| THE TENEYCK MINERAL TRUST, BY C. ANDREW TENEYCK, TRUSTEE,<br>    Plaintiff,<br>v.<br><br>CHESAPEAKE ENERGY CORPORATION, SILVER LAKE ENERGY, LLC, ENCANA CORPORATION, and ENCANA OIL & GAS (USA) INC.,<br>    Defendants. | Case No.14-cv-00201-GJQ<br><br>Hon. Gordon J. Quist<br><br>**REPLY IN SUPPORT OF CHESAPEAKE ENERGY CORPORATION'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**ORAL ARGUMENT REQUESTED** |

Brian J. Masternak (P57372)
Charles N. Ash, Jr. (P55941)
Lance R. Zoerhof (P63980)
David R. Whitfield (P73352)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
bmasternak@wnj.com
cash@wnj.com
lzoerhof@wnj.com
dwhitfield@wnj.com
616.752.2000
Co-Counsel for Plaintiff

Susan L. Hlywa Topp (P46230)
TOPP LAW PLC
213 Main St.
Gaylord, MI 49734
susan@topplaw.com
989.731.4014
Co-Counsel for Plaintiff

Molly S. Boast
Jason D. Hirsch
Hanna A. Baek
Ryan D. Tansey
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212.230.8800
molly.boast@wilmerhale.com
jason.hirsch@wilmerhale.com
hanna.baek@wilmerhale.com
ryan.tansey@wilmerhale.com

Anthony J. Rusciano (P29834)
Dennis G. Cowan (P36184)
Michael J. Barton (P34509)
PLUNKETT COONEY, P.C.
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
arusciano@plunkettcooney.com
248.901.4000
*Attorneys for Defendants Chesapeake Energy Corporation and Silver Lake Energy, LLC*

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1
ARGUMENT ........................................................................................................................ 1
I. PLAINTIFF ADVANCES AN INCORRECT LEGAL STANDARD ............................ 1
II. PLAINTIFF HAS IMPROPERLY REINVENTED ITS COMPLAINT............................ 1
III. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ................ 2
    A. The Parties Did Not Enter A Lease.................................................................... 2
    B. The Statute Of Frauds Bars Plaintiff's Breach Of Contract Claim......................... 4
IV. CHESAPEAKE RECEIVED NO UNJUST BENEFIT....................................................... 5
V. PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE........... 6
    A. Plaintiff Had No Valid Business Expectancy ........................................................ 6
    B. Chesapeake Did Not Commit A Wrongful Act Aimed At Interference ................ 7
VI. PLAINTIFF'S FRAUD-BASED CLAIMS FAIL AS A MATTER OF LAW ................. 9
    A. Plaintiff Cannot Salvage Its Claim For Fraudulent Misrepresentation................... 9
    B. Plaintiff Fails To State A Claim For Fraud In The Inducement ........................... 10
CONCLUSION................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 1, 3

*Axel Johnson, Inc. v. Arthur Andersen & Co.*,
  830 F. Supp. 204 (S.D.N.Y. 1993) ................................................................................... 6

*Bazinski v. JPMorgan Chase Bank*, N.A.,
  No. 13–14337, 2014 WL 1405253 (E.D. Mich. Apr. 11, 2014) ....................................... 9

*Buck v. Thomas M. Cooley Law School*,
  597 F.3d 812 (6th Cir. 2010) ........................................................................................... 7

*Car Carriers, Inc. v. Ford Motor Co.*,
  745 F.2d 1101 (7th Cir. 1984) ......................................................................................... 2

*Consolidated Rail Corp. v. Grand Trunk Western Railroad Co.*,
  No. 09-10179, 2009 WL 3460334 (E.D. Mich. Oct. 22, 2009) ....................................... 6

*Diaz v. Bank of America, N.A.*,
  No. 1:14-CV-411, 2014 WL 2253672 (W.D. Mich. May 29, 2014) ................................ 9

*Dow Chemical Co. v. General Electric Co.*,
  No. 04-10275, 2005 WL 1862418 (E.D. Mich. Aug. 4, 2005) ........................................ 5

*El-Hallani v. Huntington National Bank*,
  No. 13-CV-12983, 2014 WL 2217237 (E.D. Mich. May 29, 2014) ................................ 2

*Gallagher v. City of Clayton*,
  699 F.3d 1013 (8th Cir. 2012) ......................................................................................... 2

*Gillis v. Wells Fargo Bank, N.A.*,
  875 F. Supp. 2d 728 (E.D. Mich. 2012) .......................................................................... 5

*Grand Rapids Plastics, Inc. v. Lakian*,
  188 F.3d 401 (6th Cir. 1999) ....................................................................................... 6, 7

*JPMorgan Chase Bank, N.A. v. Chelsie Corp.*,
  No. 1:12-CV-352, 2013 WL 2558428 (W.D. Mich. June 11, 2013) ................................ 9

*Michigan Regional Council of Carpenters v. New Century Bancorp Inc.*,
  99 F. App'x 15 (6th Cir. 2004) ........................................................................................ 4

*Paradata Computer Networks, Inc. v. Telebit Corp.*,
  830 F. Supp. 1001 (E.D. Mich. 1993) ............................................................................. 7

*Ross v. Federal National Mortgage Ass'n*,
  No. 13-12656, 2014 WL 3597633 (E.D. Mich. July 22, 2014) ..................................................2

*Scaramuzza v. Sciolla*,
  No. 04-CV-1270, 2004 WL 2063062 (E.D. Pa. Sept. 14, 2004) ................................................5

*Uhl v. Komatsu Forklift Co.*,
  512 F.3d 294 (6th Cir. 2008) ..................................................................................................10

**STATE CASES**

*Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners Inc.*,
  821 N.W.2d 1 (Mich. 2012) ......................................................................................................6

*Chilton's, Inc. v. Wilmington Apartment Co.*,
  112 N.W.2d 434 (Mich. 1961) ..................................................................................................6

*Eerdmans v. Maki*,
  573 N.W.2d 329 (Mich. Ct. App. 1997) ...................................................................................5

*Feldman v. Green*,
  360 N.W.2d 881 (Mich. 1984) ..................................................................................................9

*Formall, Inc. v. Community National Bank of Pontiac*,
  421 N.W.2d 289 (Mich. Ct. App. 1988) ...................................................................................7

*Hi-Way Motor Co. v. International Harvester Co.*,
  247 N.W.2d 813 (Mich. 1976) ..................................................................................................9

*In re Fultz*,
  535 N.W.2d 590 (Mich. Ct. App. 1995), *rev'd on other grounds*, 554 N.W.2d 725
  (Mich. 1996) .............................................................................................................................7

*Kloina v. Domino's Pizza, L.L.C.*,
  733 N.W.2d 766 (Mich. Ct. App. 2006) ...................................................................................4

*Oakrock Exploration Co. v. Killam*,
  87 S.W.3d 685 (Tex. App. 2002) ..............................................................................................3

*People v. Chesapeake Energy Corp.*,
  Opinion & Order, No. 14-0140-FY (Mich. Dist. Ct. July 9, 2014) ..........................................7

*Rinaldo's Construction Corp. v. Michigan Bell Telephone Co.*,
  559 N.W.2d 647 (Mich. 1997) ..................................................................................................9

*Wilkinson v. Powe*,
  1 N.W.2d 539 (Mich. 1942) ......................................................................................................8

*Zurcher v. Herveat,*
 605 N.W.2d 329 (Mich. Ct. App. 1999) ................................................................................3

**DOCKETED CASES**

*Encana Oil & Gas, Inc. v. Zaremba Family Farms*,
 Second Amended Counterclaim, No. 12-cv-369 (W.D. Mich. Aug. 1, 2013) ..........................8

**STATE STATUTES**

MCL § 566.132(2) ...........................................................................................................................5

MCL § 566.108...........................................................................................................................4, 5

MCL § 440.2201 .............................................................................................................................5

**RULES**

Fed. R. Civ. P. 12(b)(6)....................................................................................................................1

**OTHER AUTHORITIES**

2-12 Moore's Federal Practice-Civil § 12.34 (2014).......................................................................2

Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011)...........................................6

**INTRODUCTION**

In a transparent attempt to salvage its meritless claims, Plaintiff (1) misstates the applicable law governing a motion to dismiss and (2) inserts "facts" into its brief that it did not allege. Applying the proper motion to dismiss standard, and disregarding allegations made for the first time in Plaintiff's brief, Counts III-VI should be dismissed for failure to state a claim.

**ARGUMENT**

**I.  PLAINTIFF ADVANCES AN INCORRECT LEGAL STANDARD**

Plaintiff accuses Chesapeake of misapplying the proper motion to dismiss standard. Pl's. Br. in Opp'n to Chesapeake's Mot. to Dismiss 1, Dkt. No. 18 ("Pl. Opp'n"). In fact, it is Plaintiff that distorts the relevant legal standard by ignoring the Supreme Court's most recent decision on evaluating whether a complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6): *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Citing to a decision that relied on a Sixth Circuit case preceding *Iqbal* by nearly a year, Plaintiff asserts that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Pl. Opp'n 10. This misconstrues the governing standard. First, the allegations to be taken as true must be well-pleaded, non-conclusory factual allegations. *Iqbal*, 556 U.S. at 679 (pleadings that are "no more than conclusions[] are not entitled to the assumption of truth"). Second, any well-pleaded, non-conclusory factual allegations must "plausibly suggest an entitlement to relief," which requires "more than the mere possibility of misconduct." *Id.* at 679, 681.

**II.  PLAINTIFF HAS IMPROPERLY REINVENTED ITS COMPLAINT**

Unable to rebut Chesapeake's arguments with its Complaint, Plaintiff has improperly added "allegations" throughout its brief. Plaintiff inserts these new allegations and cites to its Complaint as though it had properly pleaded them. This is wrong and misleading, and

1

Chesapeake below highlights some of the key examples where relevant.

When faced with "additional facts asserted in a memorandum opposing the motion to dismiss," courts should disregard them "because such memoranda do not constitute pleadings under Rule 7(a)." 2-12 Moore's Federal Practice-Civil § 12.34 (2014); *see also, e.g.*, *Ross v. Fed. Natl Mortg. Ass'n*, No. 13-12656, 2014 WL 3597633, at *8 n.1 (E.D. Mich. July 22, 2014). Ample authority proscribes such "amendment by brief."[1] The Court should disallow the attempt to do so here.

## III. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

### A. The Parties Did Not Enter A Lease

Plaintiff fails to plead that the parties ever consummated an oil and gas lease. There is no signed lease agreement, and the Complaint is devoid of *factual* allegations plausibly demonstrating that Chesapeake intended to be bound without executing a lease. The parties also failed to reach agreement on "all essential points" of an oil and gas lease. Chesapeake's Br. in Support of Mot. to Dismiss 6-10, Dkt. No. 9 ("CHK Br.").

Plaintiff fails to confront Chesapeake's substantive arguments and instead relies on allegations made for the first time in its brief. For example, Plaintiff now argues that Chesapeake intended to be bound without a signed lease. Pl. Opp'n 12 ("Ten Eyck *is* alleging that, through its July 7 offer, Chesapeake intended to be bound even without a signed oil and gas lease in place"). Plaintiff cites to ¶¶ 91-110 of its Complaint for this assertion, but nothing in ¶¶ 91-110 remotely indicates that Chesapeake was willing to be bound without a signed lease. That Couturier "sent Plaintiff an oil and gas lease form consistent with the offered price terms,"

---

[1] *E.g.*, *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Gallagher v. City of Clayton*, 699 F.3d 1013, 1022 (8th Cir. 2012) (same); *El-Hallani v. Huntington Nat'l Bank*, No. 13-CV-12983, 2014 WL 2217237, at *6 (E.D. Mich. May 29, 2014) (same).

2

Compl. ¶ 99, if anything, shows that Chesapeake intended to reduce any agreement to a signed writing. Thus, Plaintiff advances exactly the sort of "'naked assertion[]' devoid of 'further factual enhancement'" that must be disregarded on a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Plaintiff also asserts that the Addendum did not change the material terms of the contract, Pl. Opp'n 12-13. This argument is incorrect and misses the point. Chesapeake did not argue that the Addendum materially changed an agreed-upon oil and gas lease; rather, it demonstrated that essential terms of the proposed oil and gas lease between these parties were contained in the Addendum, on which the parties never reached agreement. CHK Br. 7-9.

Chesapeake cited a litany of authorities demonstrating that the terms on which Plaintiff alleges agreement was reached do not, as a matter of law, constitute the essential terms of a lease. CHK Br. at 9-10.[2] Plaintiff responds to just one of these authorities, *Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685 (Tex. App. 2002), Pl. Opp'n 12, and attempts to turn a statement about contractually necessary terms into one about sufficient terms. While the terms referenced by Plaintiff may be essential,[3] standing alone they do not constitute an oil and gas lease. The *Oakrock* court explained that the term of the lease, the drilling commencement date, time and amount of payments in lieu of drilling operations, amounts to be paid for produced gas, and the character, extent, and duration of the rights to the oil and gas in place "are also essential terms." *Id.* at 691. Because the letters plaintiff sought to enforce in that case lacked those essential terms, "the letters [were] not enforceable contracts as a matter of law." *Id.*

---

[2] Contrary to Plaintiff's argument, and as even its own authority makes clear, defining the essential terms of an oil and gas lease is a matter of law. *E.g.*, *Zurcher v. Herveat*, 605 N.W.2d 329, 340-41 (Mich. Ct. App. 1999) ("[T]he material or essential provisions of a binding contract for the sale of land . . . *are a matter of contract law*[.]" (emphasis added)).

[3] Plaintiff, citing to ¶ 97 of the Complaint, asserts that Chesapeake agreed to a term requiring it to drill within certain time parameters or forfeit its rights under the lease. Pl. Opp'n 12. Neither in ¶ 97 nor in any other part of the Complaint, however, is Chesapeake alleged to have agreed to such a term. The Court should thus ignore this improper assertion. *Supra* Section II.

3

Finally, Plaintiff's repeated reference to Wayne Baker's email stating that he believed there "was a verbal offer and acceptance by Ms. Topp in [sic] behalf of Eyck [sic] by email," Compl. Ex. 11, does not mean an oil and gas lease was formed. Mr. Baker's after-the-fact, subjective state of mind is irrelevant. *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006) ("A meeting of the minds is judged by an objective standard . . . not [the parties'] subjective states of mind.")

### B. The Statute Of Frauds Bars Plaintiff's Breach Of Contract Claim

Even if a lease agreement had been reached, it would be unenforceable for lack of a signed writing satisfying the statute of frauds. Neither the Form Lease nor the Addendum is signed. The July 15 email from Ms. Topp, the only other writing on which Plaintiff indicated any reliance in the Complaint, is not signed by any proper party. This is sufficient to bar Plaintiff's contract claims. *See* CHK Br. 10-14.

Plaintiff responds to Chesapeake's arguments by adding new allegations into its brief and disputing points never raised. Arguing that the agreement was "signed" by Chesapeake, Plaintiff alleges for the first time in its brief that a July 7 email, not appended to the Complaint, contained Courturier's name and contact information, and that he was acting as authorized agent of Silver Lake. Pl. Opp'n 15. This allegation should be disregarded. *Supra* Section II. Further, even if Michigan law recognizes the *e-mail* as being signed, Plaintiff cites no authority, and defendants' know of none, to support the remarkable proposition that a signature in the e-mail can be imputed to the lease that was *attached* to the e-mail.

Plaintiff responds to Chesapeake's argument that no writing was properly signed by Plaintiff by arguing the irrelevant point that Ms. Topp was Plaintiff's counsel. Pl. Opp'n 13 n.5. Plaintiff has no answer for the actual issue—that Mich. Comp. Laws ("MCL") § 566.108 requires the signature of "the party by whom the lease or sale is to be made, or by some person

4

thereunto by him lawfully authorized *in writing*." (Emphasis added.) Ms. Topp is not alleged to have had such written authorization.[4] Moreover, Plaintiff's allegation that it engaged the service of Topp Law as counsel "to assist it in placing its property out for bid," Pl. Opp'n 3, is not only absent from the Complaint but also an inadequate substitute for the required allegation. *See, e.g.*, *Eerdmans v. Maki*, 573 N.W.2d 329, 332 (Mich. Ct. App. 1997) (listing agreement gave real estate agent authority to arrange sale but not to conclude it).

Plaintiff also argues the uncontested points that a writing satisfying the statute of frauds may consist of several documents and that an email may constitute a writing. Pl. Opp'n 11, 14. This evades Chesapeake's actual arguments and, in any event, does not save Plaintiff's claims—as discussed, the several writings alleged to make up the agreement, Pl. Opp'n 10, fail to show agreement on "all essential terms" of an oil and gas lease and are not signed by either party.

## IV. CHESAPEAKE RECEIVED NO UNJUST BENEFIT

Plaintiff's Complaint alleges that the benefit it conferred on Chesapeake and Silver Lake was an uncompensated option. Compl. ¶ 117. To deflect Chesapeake's argument that an option is a contract that itself requires an offer, acceptance, and consideration, CHK Br. 15, Plaintiff now alleges that it conferred a benefit on Chesapeake by saving Chesapeake extra expense. Pl. Opp'n 17. This presumes that had Plaintiff not accepted Chesapeake's initial terms, another company would have bid more than $1800/acre for Plaintiff's property and, in turn, Chesapeake would have had to spend more to outbid that hypothetical other company. Even had it been properly pleaded, this alleged benefit is based on a chain of hypothetical future events and cannot

---

[4]Plaintiff's cited cases, *Michigan Reg'l Council of Carpenters v. New Century Bancorp Inc.*, 99 F. App'x 15 (6th Cir. 2004), *Gillis v. Wells Fargo Bank, N.A*., 875 F. Supp. 2d 728 (E.D. Mich. 2012), and *Dow Chemical Co. v. General Electric Co.*, No. 04-10275, 2005 WL 1862418 (E.D. Mich. Aug. 4, 2005), are inapposite; they concern different statute of frauds provisions that do *not*, unlike MCL § 566.108, require written authorization. *See Mich. Reg'l Council,* 99 F. App'x at 22 (interpreting agreement's internal statute of frauds provision); *Gillis*, 875 F. Supp. 2d at 733 (interpreting MCL § 566.132(2)); *Dow*, 2005 WL 1862418, at *25 (interpreting MCL § 440.2201).

support a claim for unjust enrichment. *See, e.g.*, *Scaramuzza v. Sciolla*, No. 04-CV-1270, 2004 WL 2063062, at *5 (E.D. Pa. Sept. 14, 2004) ("Unjust enrichment is a retroactive equitable remedy, where one party has been unjustly enriched at the expense of another."); *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 830 F. Supp. 204, 212 (S.D.N.Y. 1993) ("[N]o cause of action for unjust enrichment lies for hypothetical future liabilities.").

Moreover, where the "option" was not supported by consideration, as Plaintiff affirmatively alleges, Compl. ¶ 117, the alleged removal of Plaintiff's minerals from the market was purely voluntary and cannot support liability in restitution. Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011) ("There is no liability in restitution for an unrequested benefit voluntarily conferred[.]"); *Chilton's, Inc. v. Wilmington Apartment Co.*, 112 N.W.2d 434, 437 (Mich. 1961) ("A court of equity will not relieve a party from the consequences of a risk which he voluntarily assumes." (internal quotation marks omitted)).

## V. PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

### A. Plaintiff Had No Valid Business Expectancy

Plaintiff misstates the scope of the Court's authority to dismiss a tortious interference claim. Whether Plaintiff has pleaded a valid business expectancy can be decided as a matter of law. *See, e.g.*, *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects & Planners Inc.*, 821 N.W.2d 1, 7 (Mich. 2012).[5]

Plaintiff argues that it "set forth a scenario where Ten Eyck would have accepted the pending offers with Energy West or Atlas if Chesapeake had not interfered." Pl. Opp'n 18. With

---

[5] *Consolidated Rail Corp. v. Grand Trunk Western Railroad Co.*, No. 09-10179, 2009 WL 3460334, at *17 (E.D. Mich. Oct. 22, 2009), which Plaintiff cites to argue the contrary, Pl. Opp'n 18, is unpersuasive. That case relied only on the fact that a Sixth Circuit case, *Grand Rapids Plastics, Inc. v. Lakian*, 188 F.3d 401, 408 (6th Cir. 1999), affirmed a district court's dismissal of a tortious interference claim at the summary judgment stage. *See* 2009 WL 3460334, at *17 n.15. Whether the reasonableness of a business expectancy could be decided on a motion to dismiss was not at issue in *Lakian*.

respect to Atlas' offer, there was no pending offer because Plaintiff admits that it passed on it even before Chesapeake entered the picture. Compl. ¶ 44. With respect to Energy West, the more plausible inference from the Complaint is that Plaintiff did not accept Energy West's offer because it was for *80* acres of Plaintiff's property, not all 625. Compl. Ex. 12. Thus, Plaintiff cannot plausibly plead that "but for the malicious interference of Defendants, [Plaintiff would] have entered into the contract" with Energy West. *Lakian*, 188 F.3d at 408.[6] Plaintiff's claim that but for Chesapeake's interference it would have accepted either bid is rendered all the more implausible by the fact that Plaintiff allowed the two offers to sit for 62 and 23 days, respectively, before it decided to pursue negotiations with Chesapeake, evidencing Plaintiff's own disinterest in those offers. CHK Br. 17, 19.

        **B.**        **Chesapeake Did Not Commit A Wrongful Act Aimed At Interference**

Plaintiff's alleged antitrust claims cannot support its tortious interference claim.[7] Pl. Opp'n 19. It is not sufficient merely to allege a "per se wrongful act"; rather, Plaintiff must allege the "doing of a per se wrongful act . . . *for the purpose of* invading the contractual rights or business relationship of another." *Formall, Inc. v. Cmty. Nat'l Bank of Pontiac*, 421 N.W.2d 289, 292 (Mich. Ct. App. 1988) (emphasis added). The Complaint fails to allege that the purpose of the antitrust conspiracy was interference with Plaintiff's alleged business

---

[6] For this reason, *Paradata Computer Networks, Inc. v. Telebit Corp.*, 830 F. Supp. 1001, 1002 (E.D. Mich. 1993), is not apposite, where the competing offer was to purchase the same asset as the allegedly tortious offer.

[7] Plaintiff spills much ink rehashing the antitrust claims that are not at issue in this motion. To the extent they are relevant at all, the alleged antitrust conspiracy relating to private landowners has recently been found without merit in a state criminal proceeding. After hearing evidence over a five-day preliminary examination, Judge Barton of the 89th District Court in Cheboygan County found that even under the probable cause standard, a lesser standard than preponderance of the evidence, *In re Fultz*, 535 N.W.2d 590, 594 (Mich. Ct. App. 1995), *rev'd on other grounds*, 554 N.W.2d 725 (Mich. 1996), "the evidence [was] lacking as to an actual conspiracy." *People v. Chesapeake Energy Corp.*, No. 14-0140-FY (Mich. Dist. Ct. July 9, 2014), at 2. Although Chesapeake and Encana "attempted to work out the details" of a proposed agreement to cooperate in negotiating deals with private landowners, the two companies "continued to compete against one another" and ultimately "were unable to reach agreement[.]" *Id*. A copy of this opinion is attached to the Boast Declaration accompanying this reply brief, and the Court may properly consider it on a motion to dismiss. *E.g., Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

expectancies with Atlas or Energy West—the Complaint alleges that the purpose of the antitrust conspiracy was to "avoid competition and depress prices that were being paid for the oil and gas leases." Compl. ¶ 11; *see also id.* ¶¶ 13, 45, 50-58, 62-63, 65, 71, 75-76, 83, 85, 90.[8]

Plaintiff also fails to contend with a fundamental flaw in its theory—that a plaintiff cannot, having solicited the defendant to bid against other companies in an effort to generate higher bids for itself, turn around and sue for tortious interference if a deal with the defendant is not consummated. CHK Br. 19. This is plainly not the situation this cause of action is intended to address. *See, e.g.*, *Wilkinson v. Powe*, 1 N.W.2d 539, 542 (Mich. 1942) (tortious interference claim lies when, without encouragement from plaintiff, defendant induces third party to breach contract with plaintiff).

Plaintiff makes three allegations purporting to demonstrate that Chesapeake's bid was made maliciously, constituting tortious interference. Pl. Opp'n 19. They fare no better.

The allegation that Chesapeake "agreed to lease terms . . . with no intention of closing on the deal," is made for the first time in Plaintiff's brief and therefore should be ignored.[9] The allegation that Chesapeake conspired to take TenEyck's acreage off the market to "reset" the market price restates Plaintiff's argument that Chesapeake's bid was wrongful because of the antitrust conspiracy and fails for the reasons stated above. The allegation that "Chesapeake reneged on and breached its obligations . . . under its lease with Ten Eyck" simply states a

---

[8] Indeed, the facts alleged in the Complaint make impossible any argument that Defendants' bid was wrongful because of an antitrust conspiracy. The Complaint describes Chesapeake competing fiercely to outbid Energy West, Compl. ¶¶ 98-99, which, as Plaintiff acknowledges, was acting on behalf of Encana. Pl. Opp'n 18. As the whole point of the alleged conspiracy between Chesapeake and Encana was to avoid "bidding each other up," Compl. ¶¶ 52-53, the conspiracy could not possibly have been in place at the time Chesapeake made its bid.

[9] Plaintiff's reliance on *Zaremba* for this point (Pl. Opp'n 20) is inapposite because, unlike Plaintiff here, Zaremba had in fact alleged *in its complaint* that Encana had no intention of following through on the lease. Zaremba Second Am. Counterclaim, *Encana Oil & Gas, Inc. v. Zaremba Family Farms et al.*, No. 12-cv-369 (W.D. Mich. Aug. 1, 2013), Dkt. No. 149, ¶ 112 ("At the time it signed the LOI with the Zarembas, Encana had no intention to complete the acquisition from the Zarembas contemplated by the LOI, to fulfill its contractual obligations, or to honor its representations."); *id.* ¶ 194 (same).

violation of a contractual duty, which is not sufficient to maintain a cause of action in tort. *See Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 559 N.W.2d 647, 657-58 (Mich. 1997).[10]

## VI. PLAINTIFF'S FRAUD-BASED CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiff Cannot Salvage Its Claim For Fraudulent Misrepresentation

Plaintiff does not contest that it cannot plausibly claim reliance on Statements (1) or (4); that Statement (2) is merely a statement of future expectation; or that Statement (5) is true. Pl. Opp'n 21- 22 & n.9. Thus, any fraud claim premised on these statements should be dismissed. *Diaz v. Bank of Am., N.A.*, No. 1:14-CV-411, 2014 WL 2253672, at *2 (W.D. Mich. May 29, 2014) (Quist, J.); *Bazinski v. JPMorgan Chase Bank*, N.A., No. 13–14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr.11, 2014) ("Claims left to stand undefended against a motion to dismiss are deemed abandoned.").

Plaintiff cannot plausibly claim that Statement (3) was false where Plaintiff itself pleads that Silver Lake was acquiring oil and gas leases on behalf of Chesapeake. Compl. ¶ 28. "A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *JPMorgan Chase Bank, N.A. v. Chelsie Corp.*, No. 1:12-CV-352, 2013 WL 2558428, at *4 (W.D. Mich. June 11, 2013).

Plaintiff's arguments regarding Statements (6)-(9) are all predicated on the "bad-faith" exception, under which "a fraudulent misrepresentation [claim] may be based upon a promise made in bad faith without intention of performance." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). *See* Pl. Opp'n 23. As discussed above, however, *see supra* p.8 & n.8, Plaintiff has not pleaded that Chesapeake had no intention of going through with the

---

[10] To the extent Plaintiff is arguing that the alleged breach shows the bid was malicious from the start, Plaintiff has failed to allege "with specificity, affirmative acts by the interferor which corroborate the unlawful purpose of the interference." *Feldman v. Green*, 360 N.W.2d 881, 886 (Mich. 1984).

deal (notwithstanding "assertions" in its brief); rather, it has pleaded the different case that Chesapeake planned to decide later whether to consummate the lease, Compl. ¶¶ 134-36.

### B. Plaintiff Fails To State A Claim For Fraud In The Inducement

Plaintiff's inducement claim is merely one for breach of contract masquerading as fraud. Alleging that Chesapeake committed fraud by failing to abide by its statements that it would "provide Ten Eyck 'with the best offer available,'" "was in it for the long haul," and was "acquiring gas and oil leases," Compl. ¶ 138, Plaintiff improperly asks the Court "to find fraud in the inducement where a party simply failed to uphold its side of the bargain." *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 305 (6th Cir. 2008). Finally, Chesapeake's argument that the allegedly fraudulent statements were true when made does not, as Plaintiff contends, rely on facts in dispute (Pl. Opp'n 25), but relies exclusively on statements alleged in the Complaint. CHK Br. 25 (citing Complaint).

### CONCLUSION

For the reasons set forth above, Chesapeake's motion to dismiss Counts III, IV, V, and VI of the Complaint should be granted.

Dated: August 15, 2014

By: s/ Molly S. Boast
Molly S. Boast
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 1000
Tel. (212) 230-8800
Fax (212) 230-8888
molly.boast@wilmerhale.com