## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE TENEYCK MINERAL TRUST,
BY C. ANDREW TENEYCK, TRUSTEE,

      Plaintiff,

v.

CHESAPEAKE ENERGY CORPORATION,
SILVER LAKE ENERGY, LLC,
ENCANA CORPORATION, and
ENCANA OIL & GAS (USA) INC.,

      Defendants.

Case No.14-cv-00201-GJQ

Hon. Gordon J. Quist

**REPLY BRIEF IN SUPPORT OF SILVER
LAKE ENERGY, LLC'S MOTION TO
DISMISS THE COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**ORAL ARGUMENT REQUESTED**

Brian J. Masternak (P57372)
Charles N. Ash, Jr. (P55941)
Lance R. Zoerhof (P63980)
David R. Whitfield (P73352)
WARNER NORCROSS & JUDD LLP
900 Fifth Third Center
111 Lyon Street NW
Grand Rapids, MI 49503-2487
bmasternak@wnj.com
cash@wnj.com
lzoerhof@wnj.com
dwhitfield@wnj.com
616.752.2000
*Co-Counsel for Plaintiff*

Susan L. Hlywa Topp (P46230)
TOPP LAW PLC
213 Main St.
Gaylord, MI 49734
susan@topplaw.com
989.731.4014
*Co-Counsel for Plaintiff*

Molly S. Boast
Jason D. Hirsch
Hanna A. Baek
Ryan D. Tansey
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
212.230.8800
molly.boast@wilmerhale.com
jason.hirsch@wilmerhale.com
hanna.baek@wilmerhale.com
ryan.tansey@wilmerhale.com

Anthony J. Rusciano (P29834)
Dennis G. Cowan (P36184)
Michael J. Barton (P34509)
PLUNKETT COONEY, P.C.
38505 Woodward Ave., Suite 2000
Bloomfield Hills, MI 48304
arusciano@plunkettcooney.com
248.901.4000
*Attorneys for Defendants Chesapeake
Energy Corporation and Silver Lake
Energy, LLC*

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

I.     LEGAL STANDARD.......................................................................................1

II.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST SILVER LAKE FOR
      VIOLATION OF THE SHERMAN ACT AND THE MICHIGAN ANTITRUST
      REFORM ACT .................................................................................................3

III.   PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUDULENT
      MISREPRESENTATION AGAINST SILVER LAKE .......................................8

IV.   PLAINTIFF HAS FAILED TO PLEAD A FRAUD IN THE INDUCEMENT
      CLAIM AGAINST SILVER LAKE ...............................................................10

CONCLUSION.......................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................................................2

*Baquero v. Lancet Indeminty Risk Retention Group, Inc.,*
    No. 12-CIV-24105, 2013 WL 5705574 (S.D. Fla. Oct. 18, 2013) ...........................4

*Bazinski v. JPMorgan Chase Bank, N.A.,*
    No. 13-CV-14337, 2014 WL 1405253 (E.D. Mich. Apr. 11, 2014).......................10

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................................2, 3, 7

*City Communications Inc. v. City of Detroit,*
    695 F. Supp. 911 (E.D. Mich. 1988), *aff'd,* 888 F.2d 1081 (6th Cir. 1989).........................3, 8

*Diaz v. Bank of Am., N.A.,*
    No. 14-CIV-411, 2014 WL 2253672 (W.D. Mich. May 29, 2014).......................10

*Hinds County v. Wachovia Bank, N.A.,*
    790 F. Supp. 2d 106 (S.D.N.Y. 2011)........................................................................4

*In re Travel Agent Commission Antitrust Litigation,*
    583 F.3d 896 (6th Cir. 2009) .......................................................................................5

*Kahn v. Burman,*
    673 F. Supp. 210 (E.D. Mich. 1987), *aff'd,* 878 F.2d 1436 (6th Cir. 1989) ............................9

*Michigan Division - Monument Builders of North America v. Michigan Cemetery Ass'n,*
    458 F. Supp. 2d 474 (E.D. Mich. 2006), *aff'd,* 524 F.3d 726 (6th Cir. 2008) .........................4

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 574 (1986).....................................................................................................3

*Monsanto Co. v. Spray-Rite Service Corp.,*
    465 U.S. 752 (1984).....................................................................................................3

*NorthStar Energy LLC v. Encana Corp.,*
    No. 1:13-cv-00200-PLM (W.D. Mich. Mar. 10, 2014) ...................................2, 6, 8

*Ross v. Federal National Mortgage Ass'n,*
    No. 13-CIV-12656, 2014 WL 3597633 (E.D. Mich. July 22, 2014)........................9

-ii-

*Tocco v. Richman Greer Professional Ass'n*,
    912 F. Supp. 2d 494 (E.D. Mich. 2012), *aff'd*, 553 F. App'x 473 (6th Cir. 2013) ..................... 9

**STATE CASES**

*Godwin v. City of Bellflower*,
    7 Cal. Rptr. 2d 524 (Cal. Ct. App. 1992) .................................................................................. 4

*In re Fultz*,
    535 N.W.2d 590 (Mich. Ct. App. 1995), *rev'd on other grounds*, 554 N.W.2d 725
    (Mich. 1996) ............................................................................................................................... 5

*People v. Chesapeake Energy Corp.*,
    No. 14-0140-FY (Mich. Dist. Ct. July 9, 2014) ......................................................................... 5

*Titan Insurance Co. v. Hyten*,
    817 N.W.2d 562 (Mich. 2012) .............................................................................................. 8, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ........................................................................................................................ 8

## INTRODUCTION

As shown in Silver Lake's opening Brief In Support of its Motion to Dismiss ("SL Br."), Plaintiff's antitrust, fraudulent inducement, fraudulent misrepresentation and civil conspiracy claims should be dismissed against Silver Lake principally because the Complaint does not assert any facts that could create a plausible inference that Silver Lake had knowledge of any purported collusive agreement between Chesapeake and Encana, and Plaintiff may not create such an inference by pointing to Silver Lake's ordinary business conduct or by lumping it in with use of the word "Defendants" in the Complaint's key allegations. Plaintiff attempts to distract attention from its empty pleadings by inventing facts found nowhere in the Complaint. Plaintiff also proceeds on false premises, including the propositions that Silver Lake mischaracterized the relevant pleading standard and that allegations directed at an entirely different, non-party entity, O.I.L. Niagaran, L.L.C. ("OILN"), can satisfy Plaintiff's pleading obligations as to Silver Lake. At bottom, where the Complaint (purportedly) addresses a conspiracy, it does not address Silver Lake; and where it addresses Silver Lake, it does not allege a conspiracy. "Guilt by association" and sinister, unsupported interpretations of Silver Lake's ordinary business conduct do not make up for the Complaint's basic deficiencies:  the allegations depict unilateral, not conspiratorial, action by Silver Lake. Plaintiff's claims should be dismissed on that basis.[1]

## ARGUMENT

## I.    LEGAL STANDARD

The issue before the Court is whether, as a matter of law, Plaintiff's allegations against Silver Lake are sufficient to create a plausible inference that Silver Lake knowingly and actively participated in an antitrust conspiracy. Silver Lake does not argue, as Plaintiff suggests, that

---

[1] Silver Lake hereby incorporates by reference the Reply Br. in Support of Chesapeake's Mot. to Dismiss ("CHK Reply Br."), which provides additional, independent bases for dismissing certain of the claims against Silver Lake.

Plaintiff must "conclusively prove" Silver Lake's knowing participation in the alleged antitrust conspiracy, nor does Silver Lake "mischaracterize the applicable pleading standard" in any other way. Pl's Br. in Opp'n to Silver Lake's Mot. to Dismiss 1 ("Pl. SL Opp'n"). On the contrary, Silver Lake's opening brief accurately sets out the well-established pleading standards articulated by the Supreme Court: that a Complaint must "contain sufficient *factual matter*, accepted as true, to state a claim to relief that is plausible on its face." *see* SL Br. 3-4; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).

It is Plaintiff that mischaracterizes the relevant standard by suggesting that "plausibility," "[p]ut another way," means that "Ten Eyck must plead sufficient facts to show that discovery into the extent of Sliver Lake's knowledge *could be* fruitful" Pl. SL Opp'n 1 (emphasis in original). No court has ever articulated such a pleading standard or permitted a plaintiff to defeat a motion to dismiss because discovery "could be fruitful." The case Plaintiff cites to support its remarkable proposition also says nothing of the sort; rather, it merely quotes the more demanding antitrust standard from *Twombly*: "that the facts in the complaint [must] raise a '*reasonable expectation* that discovery will reveal evidence of illegal agreement.'" *NorthStar Energy LLC v. Encana Corp.,* No. 1:13-cv-00200-PLM, at 22 (W.D. Mich. Mar. 10, 2014), Dkt. No. 37 ("*NorthStar*") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (emphasis added). But a reasonable expectation, *i.e*., that of an objective observer, that discovery will reveal evidence of illegality is a far cry from permitting discovery where the plaintiff merely believes it "could be fruitful." Indeed, *Iqbal v. Ashcroft*, which Plaintiff does not cite, is the most recent word from the Supreme Court on the applicable pleading standard. *Iqbal* makes clear that plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. And in an antitrust case based on circumstantial evidence

of conspiracy, where a complaint alleges "conduct that is as consistent with permissible competition as with illegal conspiracy [it does] not, without more, support even an inference of conspiracy." *City Commc'ns, Inc. v. City of Detroit*, 695 F. Supp. 911, 914 (E.D. Mich. 1988), *aff'd*, 888 F.2d 1081 (6th Cir. 1989) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 n.21 (1986)).[2]

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST SILVER LAKE FOR VIOLATION OF THE SHERMAN ACT AND THE MICHIGAN ANTITRUST REFORM ACT

Plaintiff fails to plead any facts that would support a plausible inference of Silver Lake's own active and knowing participation in an alleged antitrust conspiracy with Chesapeake and Encana. Silver Lake's status as Chesapeake's representative, (Compl. ¶ 21), does not permit Plaintiff to impute the acts or knowledge of Chesapeake to Silver Lake, *see* SL Br. 5-6. The allegations against Silver Lake show only that it acted as Chesapeake's leasing representative and do not demonstrate, or leave room to infer, that Silver Lake had a "conscious commitment" to any alleged conspiracy. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984); *see also* SL Br. 5, 7.

Faced with these deficiencies, Plaintiff attempts to engineer a link between Silver Lake and the alleged antitrust conspiracy. First, Plaintiff goes on at length discussing the actions of a different company, OILN, implying that allegations about OILN's knowledge and actions can somehow create a plausible inference that Silver Lake, *an entirely unrelated entity*, not alleged to have any involvement with OILN, knowingly participated in an antitrust conspiracy. Second,

---

[2] Plaintiff's contention that pre-discovery dismissals in antitrust cases are "rarely warranted," (Pl. SL Opp'n 1, 8), is also wrong. The Supreme Court in *Twombly* specifically cautioned that "it is only by taking care to require allegations that reach the level suggesting conspiracy" that the potentially enormous expense of discovery can be avoided. *Twombly*, 550 U.S. at 559.

Plaintiff suggests that allegations about Silver Lake's normal business activities somehow show its knowledge and participation in an anticompetitive conspiracy. These efforts fail.

**Allegations About OILN:** Plaintiff takes the position that allegations solely directed at OILN can support an inference of conspiracy as to Silver Lake. Pl. SL Opp'n 9-10. But OILN has no legal or alleged factual relationship to Silver Lake; it was merely "another representative of Chesapeake's in Michigan." Compl. ¶ 69. Plaintiff does not, because it cannot, cite a single case or legal basis for the stunning proposition it advances: that actions and knowledge of one company can be imputed to another where the two companies have no legal or factual relationship whatsoever. Even in the limited circumstances where the law permits liability to be imputed from one entity to another, it certainly does not permit imputation where no legal or factual relationship between those two entities is alleged.[3]

As discussed in Silver Lake's opening brief, Plaintiff "cannot escape [its] burden of alleging that each defendant participated in or agreed to join the [antitrust] conspiracy." *Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n,* 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006), *aff'd,* 524 F.3d 726 (6th Cir. 2008). Ascribing Silver Lake "guilt[y] based on association" for operating in the same industry as another alleged antitrust conspirator cannot "nudge [Plaintiff's] claims across the line from conceivable to plausible." *Hinds Cnty. v. Wachovia Bank, N.A.*, 790 F. Supp. 2d 106, 115-16 (S.D.N.Y. 2011) ("[T]he mere fact that [a defendant is] involved in an industry that is purportedly rife with antitrust violations is not, without more, enough to state a § 1 claim."); SL Br. 9-10. Courts routinely reject such guilt by association arguments in antitrust cases and dismiss defendants, like Silver Lake, as to which

---

[3] Indeed, "there is no principle of agency law imputing the knowledge of one agent to all others." *See Godwin v. City of Bellflowe*r, 7 Cal. Rptr. 2d 524, 527 (Cal. Ct. App. 1992); *Baquero v. Lancet Indem. Risk Retention Grp., Inc.*, No. 12-CIV-24105, 2013 WL 5705574, at *1 (S.D. Fla. Oct. 18, 2013) ("Defendant's arguments can be interpreted in two ways: (1) that the knowledge of one agent for a corporation can be imputed to another agent, or (2) that corporations have knowledge that can be imputed to individuals. Neither of these are correct . . . .").

sufficient, specific allegations are lacking, as reflected in cases Plaintiff notably ignores.  *E.g.*, *In re Travel Agent Comm'n Antitrust Litig.,* 583 F.3d 896, 905 (6th Cir. 2009) (upholding dismissal of antitrust claims against certain defendants because complaint failed to "specify how these defendants [were] involved in the alleged conspiracy"); *see also* SL Br. 9-10.[4]

**Silver Lake Acting As Chesapeake's Leasing Representative:**  The remainder of Plaintiff's opposition mischaracterizes and repackages the Complaint to create the impression that it contains facts which are, in truth, totally absent.  *See* Pl. Opp'n 9-10.  The passages Plaintiff identifies do not actually allege facts that could create a plausible inference that Silver Lake knew about any conspiracy.  Most of the cited allegations do not even mention Silver Lake.  Those that do merely describe Silver Lake's ordinary business conduct and, at most, are equally consistent with unilateral actions by Silver Lake acting in furtherance of its individual interests.

Plaintiff asserts that the following allegations "provide a reasonable basis to infer . . . Silver Lake decided to join in on the conspiracy," (Pl. Opp'n 10):

- (1) Silver Lake "knew of the hypercompetitive state of the Northern Michigan oil and gas market in May and June of 2010 – particularly between the two fiercest competitors in that market, Chesapeake and Encana,"  Pl. SL Opp'n 9 (citing Compl. ¶¶ 2-3, 21, 94);

- (2) In mid-July "Encana and Chesapeake, both simultaneously slashed their maximum per acre bonus amount they were offering for Utica/Collingwood interests in northern Michigan by 50%," Pl. SL Opp'n 9 (citing Compl. ¶ 65);

- (3) There was a "July 16 directive that was given to OILN, ordering it to rescind leases," followed by an email from an employee of OILN asking if Encana's simultaneous 50% price drop was a "coincidence," Pl. SL Opp'n 9-10 (citing Compl. ¶ 66); and

---

[4] Plaintiff's allegations about Silver Lake are even more implausible in light of a recent decision by the court in *People v. Chesapeake Energy Corp.*, No. 14-0140-FY (Mich. Dist. Ct. July 9, 2014).  That court found evidence "lacking as to an actual conspiracy" between Chesapeake and Encana with regard to a proposed agreement to cooperate in negotiating deals with private landowners.  *Id.* at 2.  Even after considering the same communications that Plaintiff's Complaint references here, and even under a "probable cause [standard, which] is a lesser standard than preponderance of the evidence," *In re Fultz*, 535 N.W.2d 590, 594 (Mich. Ct. App. 1995), *rev'd on other grounds*, 554 N.W.2d 725 (Mich. 1996), the court held the two companies "were unable to reach agreement" on the topic of negotiations with private landowners and "continued to compete against one another" throughout the relevant time period.  *Chesapeake*, at 2; CHK Reply Br. 7 n.6.

- (4) On July 17 Wayne Baker of RedSky told Ten Eyck's attorney that "all pending oil and gas lease offers were being cut by 50%," and on July 21 "reneged on its lease deal with Ten Eyck." Pl. SL Opp'n 9-10 (citing Compl. ¶¶ 100-102).

None of these supposed allegations comes close to supporting a plausible inference that Silver Lake actively and knowingly participated in an alleged antitrust conspiracy with Chesapeake and Encana.

First, Silver Lake's knowledge that a competitive market for leases existed in May 2010 is entirely *consistent* with competition and cannot support any inference that Silver Lake knew about and actively participated in an alleged conspiracy.[5] Equally irrelevant to evaluating Silver Lake's antitrust liability are the allegations in Paragraphs 65 and 66, both of which concern allegations about OILN, Chesapeake, and Encana, and do not mention Silver Lake at all. Silver Lake's knowing participation in an alleged antitrust conspiracy cannot be inferred from allegations that an employee from a different company, OILN, asked Chesapeake if Encana's 50% price drop was a "coincidence," in a communication *that did not include Silver Lake*.[6]

Second, Plaintiff implies that Silver Lake's knowledge of a simultaneous 50% drop in offered bonus amounts by Chesapeake and Encana can be used to infer Silver Lake's knowledge of the alleged conspiracy. But the Complaint does not allege such knowledge. Even if Silver Lake had this knowledge, it would provide no basis to infer that it joined an anticompetitive agreement between Chesapeake and Encana. Allegations that Chesapeake and Encana

---

[5] Plaintiff's assertion that "Silver Lake knew of the desirability of Ten Eyck's leasehold position," Pl. SL Opp'n 9, reads facts into the Complaint that are absent. Nothing in paragraph 94—the only paragraph cited for this proposition—alleges that Silver Lake knew of the desirability of Ten Eyck's leases. This assertion should therefore be disregarded. *See infra* p. 9. In any event, knowledge about the "desirability" of Ten Eyck's leaseholds provides no basis to infer that Silver Lake knew of a conspiracy between Chesapeake and Encana. Such allegations, even if they were in the Complaint, would merely show that Silver Lake knew about the Michigan area in which it worked.

[6] As discussed in Silver Lake's opening brief, another case in this district, *NorthStar*, held that a single communication raised a plausible inference that OILN knew about the alleged Chesapeake-Encana conspiracy: "David McGuire of OILN was part of an email conversation that included Chesapeake's CEO telling Chesapeake's vice president it was time 'to smoke a peace pipe with eca on this one if we are bidding each other up.'" *Id.* at 23. Notably, the court in *NorthStar* did not discuss *any* other allegations giving rise to a "plausible inference" of knowledge by OILN, including the emails Plaintiff relies on here. *Id.* at 23-24. The *NorthStar* decision demonstrates the deficiency of Plaintiff's allegations, and Plaintiff does not argue otherwise. If *NorthStar* is the standard here (as Plaintiff implies it to be by citing it over a half dozen times), Plaintiff has failed to meet it.

simultaneously dropped their lease prices closely resemble the consciously parallel decisions of competitors that the Supreme Court in *Twombly* found to be "so natural" and inadequate to support a plausible inference of an unlawful agreement.  550 U.S. at 566 ("[I]f alleging parallel decisions to resist competition were enough to imply an antitrust conspiracy, pleading a § 1 violation against almost any group of competing businesses would be a sure thing.").  To argue, as Plaintiff does, that a leasing representative that merely *observes* such parallel conduct should be charged with knowledge of an antitrust conspiracy runs contrary to both law and logic.

Third, the remaining paragraphs, 100-102, allege only that Silver Lake dealt with Ten Eyck as Chesapeake's leasing representative, informed Ten Eyck's counsel that all pending lease offers were being cut by 50%, and eventually rescinded Ten Eyck's offer at Chesapeake's request.  These allegations do not give rise to a plausible inference that Silver Lake knew of, let alone joined, any antitrust conspiracy.  Certainly none of these paragraphs directly alleges that Silver Lake had such knowledge, and the suggestion in Plaintiff's brief that Silver Lake was instructed by Chesapeake to rescind Ten Eyck's lease, besides itself being an unsupported inference, does not provide a basis to infer Silver Lake's participation in a conspiracy.  Plaintiff's allegations are completely consistent with Silver Lake's role as a leasing representative following the instructions of its principal, Chesapeake, and Plaintiff fails to explain how this conduct indicates that Silver Lake was acting anticompetitively with that principal and other alleged conspirators.  Moreover, an oil and gas company might rescind leases for numerous legitimate business reasons, all of which are consistent with normal competition.  *See* SL Br. 8.  Silver Lake would have had no reason to suspect a different motive for this instruction and, more importantly, Plaintiff alleges *none*.  Allegations such as these, of "conduct that is as consistent with permissible competition as with illegal conspiracy [do] not, without more, support even an

7

inference of conspiracy." *City Commc'ns, Inc.*, 695 F. Supp. at 914 (internal quotation marks omitted); *see also* SL Br. 8.[7]

### III.    PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUDULENT MISREPRESENTATION AGAINST SILVER LAKE

For the reasons set forth in Chesapeake's motion to dismiss and reply brief, Plaintiff fails to state a claim against Silver Lake for fraudulent misrepresentation.  Silver Lake also explains in its opening brief that certain of these allegations of fraudulent misrepresentation fail as to Silver Lake for additional reasons.  Specifically, allegations that Silver Lake and Chesapeake represented that they wanted to make Plaintiff a "very attractive offer," Compl. ¶ 132(d); "the best offer available," *id*. ¶ 132(e); to be the "last bidder," *id*. ¶ 134; and "that Plaintiff would be paid $1,800 per acre for their mineral rights," *id*. ¶ 138, cannot support a fraudulent misrepresentation claim as to Silver Lake because Plaintiff fails to allege that Silver Lake acted with knowledge of any alleged collusive scheme between Chesapeake and Encana such that it could have possessed the *scienter* necessary to support a fraud claim.  *See* SL. Br. 13 n.4; Fed. R. Civ. P. 9(b).

In a last-ditch effort to rescue its claims, Plaintiff invokes the fraud based on "innocent misrepresentation" doctrine and argues that it "is not required to plead that Silver Lake knew its statements to Ten Eyck were false."  Pl. SL Opp'n 14.  But innocent misrepresentation is a different cause of action than fraudulent misrepresentation, one that Plaintiff has never alleged.[8] *See, e.g.*, *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567, 569 (Mich. 2012) ("Michigan's contract

---

[7] Plaintiff misleadingly implies that pleading Silver Lake's "acquiescence" can provide a sufficient, alternative route to alleging Silver Lake's antitrust liability.  *See* Pl. Opp'n 13.  However, contrary to Plaintiff's contention, "courts have stressed that this acquiescence must be knowing involvement; the defendant must be conscious of the scheme of which it was a part and know that its actions will have anticompetitive effects.  If a defendant furthers the object of a conspiracy without any knowledge of it, he is not liable as a participant."  *NorthStar,* at *23 (citations omitted).

[8] Count VI of the Complaint is titled "*Fraudulent Misrepresentation* And Fraud In The Inducement As To Silver Lake and Chesapeake," and the corresponding section of Plaintiff's opposition brief is titled "[F]raudulent [M]isrepresentation." (Pl. SL Opp'n 13) (emphasis added).

law recognizes several interrelated *but distinct* common-law doctrines—loosely aggregated under the rubric of 'fraud'. . . . [t]hese doctrines include actionable fraud, also known as fraudulent misrepresentation; [and] innocent misrepresentation" and these distinct doctrines "each contain separate elements.") (emphasis added); *Kahn v. Burman*, 673 F. Supp. 210, 214 (E.D. Mich. 1987), *aff'd*, 878 F.2d 1436 (6th Cir. 1989) (same). Plaintiff did not plead a claim for fraud based on innocent misrepresentation in its Complaint, and it may not do so now. *E.g.*, *Ross v. Fed. Nat'l Mortg. Ass'n,* No. 13-CIV-12656, 2014 WL 3597633, at *8, n.1 (E.D. Mich. July 22, 2014) ("[I]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Even if it were not too late, Plaintiff fails to satisfy the elements of an innocent misrepresentation claim. "Under Michigan law, the rule of innocent misrepresentation only applies to parties in privity of contract" where "the injury suffered by the victim … inure[s] to the benefit of the misrepresenter." *Tocco v. Richman Greer Prof'l Ass'n*, 912 F. Supp. 2d 494, 525-26 (E.D. Mich. 2012), *aff'd*, 553 F. App'x 473 (6th Cir. 2013) (internal quotation marks omitted). As argued in Chesapeake's Motion to Dismiss (p. 5-12), Plaintiff was never in privity of contract with Silver Lake (because no binding contract existed). As such, "Plaintiff cannot establish this essential element of [an] innocent misrepresentation claim." *Tocco*, 512 F. Supp. 2d at 526. Second, Plaintiff has failed to allege that its purported injury "inured" to Silver Lake's benefit. The Complaint alleges receipt of a single benefit by Defendants: "a mere option" to lease Plaintiff's land. But Plaintiff fails to demonstrate that Silver Lake benefited from this "option," because, Silver Lake never provided Plaintiff with any consideration and thus had no right to enforce the "option," CHK Br. 15-16; s*ee, e.g., Titan Ins. Co.,* 817 N.W.2d at 568, in

9

addition to the fact that Silver Lake was solely acquiring leases for Chesapeake, not itself, and thus did not stand to benefit from this activity.

## IV.   PLAINTIFF HAS FAILED TO PLEAD A FRAUD IN THE INDUCEMENT CLAIM AGAINST SILVER LAKE

As Silver Lake argued in its opening brief, Plaintiff's fraud in the inducement claim fails against Silver Lake because the complaint lacks any allegations supporting an inference that Silver Lake knew of the alleged conspiracy such that it could have knowingly made the misrepresentations alleged. *See* SL Br. 12-13.

Plaintiff completely fails to address its fraud in the inducement claim in its opposition to Silver Lake's Motion to Dismiss. Accordingly, the Court may properly "deem[] this claim abandoned" as against Silver Lake. *Diaz v. Bank of Am., N.A.,* No. 14-CIV-411, 2014 WL 2253672, at *2 (W.D. Mich. May 29, 2014) (Quist, J.); *see also Bazinski v. JPMorgan Chase Bank, N.A.*, No. 13-CV-14337, 2014 WL 1405253, at *2 (E.D. Mich. Apr. 11, 2014).

## CONCLUSION

For the foregoing reasons, as well as those set forth in Chesapeake's briefs, all Counts of the Complaint asserted against Silver Lake should be dismissed.

Dated:  August 15, 2014

By:   s/  Molly S. Boast
      Molly S. Boast
      WILMER CUTLER PICKERING
       HALE AND DORR LLP
      7 World Trade Center
      250 Greenwich Street
      New York, NY 1000
      Tel. (212) 230-8800
      Fax (212) 230-8888
      molly.boast@wilmerhale.com