UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

THE TEN EYCK MINERAL TRUST,
BY C. ANDREW TEN EYCK, TRUSTEE

      Plaintiff,

v.                                        Case No. 1:14-CV-201

CHESAPEAKE ENERGY CORPORATION,
SILVER LAKE ENERGY, LLC, ENCANA
CORPORATION and ENCANA OIL &        HON. GORDON J. QUIST
GAS (USA) INC.,

      Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

      Plaintiff, the TenEyck Mineral trust, alleges that Defendants Encana Corp., Encana Oil & Gas (USA) (collectively, Encana), and Chesapeake Energy Corp. (Chesapeake) entered into an agreement to depress prices for mineral rights in northern Michigan, and that Chesapeake's leasing agent, Defendant Silver Lake Energy, LLC (Silver Lake), furthered the collusive scheme. Plaintiff further alleges that Chesapeake and Silver Lake entered into a contract to lease Plaintiff's mineral rights, that they did not intend to honor that contract, and that they ultimately breached it. Plaintiff asserts claims against all the defendants based on federal and state antitrust law, civil conspiracy, and tortious interference. Plaintiff also alleges breach of contract and fraud claims against Chesapeake and Silver Lake. Defendants have filed motions to dismiss some of the claims against them. The Court has reviewed the briefs and held oral argument. For the reasons that follow, the Court will grant the motions as to some of Plaintiff's claims and deny the motions as to other claims.

1. **Encana's Motion to Dismiss**

A claim for tortious interference with a business relationship or expectancy requires: (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy by the defendant; (3) intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) damages resulting from the breach or termination. *Cedroni Ass'n, Inc. v. Tomblinson, Harburn Assocs., Architects and Planners, Inc.*, 492 Mich. 40, 45, 821 N.W. 2d 1, 3 (2012). The complaint alleges that Plaintiff had offers from Atlas and Energy West, and that those offers constituted business expectancies. It further alleges that Defendants caused Plaintiff to turn down the offers, or not pursue negotiations with those companies, by offering Plaintiff large bonus amounts and then defaulting on the obligation to pay. Although the complaint names all the defendants, the actions that constitute interference were taken by Chesapeake and/or Silver Lake, rather than Encana. As such, Plaintiff has not sufficiently alleged that Encana intentionally interfered with its business expectancies.

Encana could not interfere with the offer from Energy West, since it is undisputed that Energy West was acting on Encana's behalf. *See Engenius, Inc. v. Ford Motor Co.*, No. 290682, 2010 WL 2977407, at *5 (Mich. Ct. App. July 29, 2010) (per curiam) ("[A] party cannot be liable for tortiously interfering with its own contractual or advantageous business relationship."). With regard to the offer from Atlas, Plaintiff alleged it its complaint that it discontinued negotiations with Atlas because of the offer from Chesapeake, and not because of any action on the part of Encana. There are no allegations linking the termination of Plaintiff's relationship with Atlas to Encana.

Finally, Plaintiff argues in its brief that Encana interfered with its relationship with Chesapeake. The complaint mentioned a business expectancy only with Atlas and Energy West, and alleged that the actions that constituted the interference were making an offer and then defaulting

2

on an obligation to pay. It is undisputed that Plaintiff did not accept Encana's offer, and therefore Encana never had an obligation to pay Plaintiff. Plaintiff cannot now argue that the actions that constituted interference were something else entirely. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Plaintiff's claim is that Defendants priced out the competition and then defaulted on their obligation to pay. Although Plaintiff named all the defendants, the actions that form the basis of the claim were allegedly those of Chesapeake and Silver Lake, and not Encana. Because Plaintiff has failed to allege that Encana interfered with any of its business expectancies, the Court will dismiss the tortious interference claim against Encana.

**2.     Chesapeake's Motion to Dismiss**

A.     Tortious Interference

Chesapeake argues that the tortious interference claim against it should be dismissed because the offers from Energy West and Atlas did not constitute legitimate business expectancies. A plaintiff asserting a tortious interference claim must allege "a *specific* and *reasonable* prospective economic advantage that was interfered with." *Cedroni*, 492 Mich. at 58, 821 N.W. 2d at 10. The business expectancy must be "a reasonable expectation and not mere wishful thinking." *Id.* "However, a plaintiff need not demonstrate a guaranteed relationship given the prospective nature of the expectation at issue." *Id.* The Court finds that the offers from Atlas and Energy West were specific and sufficient to give rise to a reasonable expectation of a relationship between the parties. Accordingly, Plaintiff has sufficiently alleged the first element of its claim.

Furthermore, the complaint alleges that Chesapeake's actions were taken not for legitimate purposes, but to further an illegal collusive scheme, and that those actions caused Plaintiff to forego

negotiations with Chesapeake's competitors. Finally, the fact that Plaintiff invited bids does not foreclose its tortious interference claim. Even if Plaintiff invited bids, it did not invite bidders to withdraw their offers or renege on their agreements—actions that Chesapeake allegedly took which form the basis of Plaintiff's claim. Accordingly, Plaintiff's tortious interference claim against Chesapeake may proceed.

B.  Breach of Contract

Chesapeake argues that it never entered into a contract with Plaintiff, and that, even if it did, any such agreement is barred by the statute of frauds. Michigan law requires that a contract for a lease longer than one year must be in writing and signed by the party by whom the lease is to be made, or by some person that he lawfully authorized in writing. M.C.L. § 566.108. *See also* 1A Summers Oil & Gas § 10:3 (3d ed. 2013) ("Contracts to make an oil and gas lease are within that section of the statute of frauds which provides that agreements to lease for more than one year must be in writing."). It also requires that an agreement that is not to be performed within one year be signed by the party to be charged with the agreement. M.C.L. § 566.132(1). Because the two requirements should be read together, "a lease for more than a year [must] be signed by the lessor *and* by the party to be charged, unless they are the same entity." *Rutila Props., LLC v. Thumb Cellular, LLC*, No. 294907, 2011 WL 475198, at *3 (Mich. Ct. App. Feb. 10, 2011) (per curiam) (emphasis in original).

It is undisputed that neither party signed the lease or the addendum to the lease in this case. But, Plaintiff argues that two emails are sufficient to satisfy the writing requirement for the statute of frauds: (1) a July 7, 2010 email from Silver Lake's agent stating the price for the lease and attaching the form lease; and (2) a July 15, 2010 email from Plaintiff's counsel, Susan Topp, stating that Plaintiff had decided to accept Silver Lake's offer.

4

The statute of frauds may be satisfied if a note or memorandum of an agreement is in writing and signed, even if the entire agreement is not written and signed. *Kelly-Stehney & Assoc. v. MacDonald's Indus. Prods., Inc.*, 265 Mich. App. 105, 111, 693 N.W. 2d 394, 398 (2005). However, the note or memorandum itself must satisfy the requirement of the statute of frauds. The sole document that Plaintiff cites as containing its signature is the July 15 email, which was sent and signed Ms. Topp. Michigan law explicitly requires that a lease must be signed "by the party by whom the lease . . . is to be made, or by some person thereunto by him *lawfully authorized in writing*." M.C.L. § 566.108 (emphasis added). The record contains no indication that Plaintiff ever executed a written authorization for Ms. Topp to sign a lease on Plaintiff's behalf.

Plaintiff argues requiring a representative to obtain written authorization to sign a lease is an overly rigid reading of the law. However, the law is not ambiguous—a lease must be signed by either the lessor or someone that he authorizes in writing. Furthermore, Michigan courts have shown no indication of abandoning the written authorization requirement. On the contrary, the Michigan Supreme Court previously held that a contract that fell under the requirement was invalid under the statute of frauds because it was signed by an agent that lacked written authorization. *Forge v. Smith*, 458 Mich. 198, 208-09, 580 N.W. 2d 876, 882 (1998).

Plaintiff did not sign the lease, its addendum, or any note or memorandum of agreement. Accordingly, any agreement is invalid under the statute of frauds, and Plaintiff's claim for breach of contract will be dismissed.

C.  Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege that a defendant received a benefit, and that the plaintiff suffered an inequity from the defendant retaining such benefit. *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195, 729 N.W.2d 898, 904 (2006). Plaintiff

alleges that the benefit Chesapeake received was that Plaintiff took its property off the market, allowing Chesapeake to treat the agreement with Plaintiff like a "mere option," and renege on it at will. Plaintiff has cited no case supporting a similar theory for unjust enrichment, and the Court is aware of none. Furthermore, this theory stretches the law of unjust enrichment beyond any meaningful limit. Any seller who was disappointed by the failure to reach a final agreement could assert such a theory, arguing that the buyer received a "benefit" because he was able to discontinue negotiations. Accordingly, Plaintiff has not stated a viable claim for unjust enrichment.

      D.     <u>Fraud</u>

Plaintiff has asserted a fraud claim against Chesapeake, arguing that Chesapeake misrepresented that it would lease Plaintiff's mineral rights when in fact it never intended to do so. At oral argument, counsel for Chesapeake informed the Court that in preparing for oral argument, it had found a case rejecting a similar claim, *Cassidy v. Kraft-Phenix Cheese Corp.*, 285 Mich. 426, 280 N.W. 814 (1938). In *Cassidy*, the plaintiff asserted a fraud claim based upon the allegation that the defendant never intended to honor its oral contract with the plaintiff. *Cassidy*, 285 Mich. at 434, 280 N.W. at 816. The court concluded that the statute of frauds not only barred enforcement of the oral agreement, but also precluded the plaintiff's fraud claim. *Id.* The court explained that the statute of frauds prohibits actions based indirectly on an oral contract, including an action for damages based on "fraud in refusing to perform the contract, even though the defendant at the time of making the oral contract may have had no intention of performing it." *Id.* at 434, 280 N.W. at 817-19. *See also Taylor v. Hockman*, No. 288443, 2010 WL 3385997, at * 3 (Mich. Ct. App. Aug. 24, 2010) (per curiam) ("[A] fraud claim must not be dependent upon either direct or indirect enforcement of an oral contract that is voided under the statute of frauds.").

At oral argument, Chesapeake argued that the holding in *Cassidy* prevents Plaintiff from prevailing on its fraud claim. Because that case was first raised during oral argument, however,

6

Plaintiff has not had an opportunity to fully respond to Chesapeake's argument. Thus, the Court will allow Plaintiff to respond before ruling on the motion to dismiss the fraud claim.

**3.     Silver Lake**

Silver Lake has moved to dismiss all claims against it. For the reasons stated with regard to Chesapeake's motion, the Court will dismiss the breach of contract and unjust enrichment claims, allow Plaintiff's tortious interference claim to proceed, and defer ruling on the fraud claim. Finally, the Court finds that Plaintiff has sufficiently alleged claims against Silver Lake under the Sherman Act, 15 U.S.C. § 1, *et seq.*, and the Michigan Antitrust Reform Act, M.C.L. § 445.772 *et seq.*, and will permit those claims to proceed.

To state a Sherman Act claim, a plaintiff must plead more than a restraint of trade; it must plead an agreement in restraint of trade." *Erie Cnty. v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012).[1] "[W]hat is required at the pleading stage [in an antitrust suit] is a plausible, not probable, entitlement to relief." *Id.* at 868. The plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965(2007). A corporate agent may be held liable for an antitrust violation if it "actively and knowingly engaged in a scheme designed to achieve anticompetitive ends." *Brown v. Donco Ents., Inc.*, 783 F.2d 644, 646 (6th Cir. 1986).

Silver Lake argues that Plaintiff has failed to satisfy its pleading burden because Plaintiff has not alleged that Silver Lake actively and knowingly participated in any conspiracy. Silver Lake relies primarily on *Twombly* and subsequent cases. *Twombly* involved allegations that two telephone carriers engaged in conscious parallelism to inhibit the growth of upstart carriers, and that they entered into agreements not to compete with one another. 550 U.S. 544, 127 S. Ct. 1955. The Court

---

[1] Courts have applied the same analysis to antitrust claims under federal and Michigan law. *Midwest Auto Auction, Inc. v. McNeal*, No. 11-14562, 2012 WL 3478647, at *5 n.5 (E.D. Mich. Aug. 14, 2012).

held that the complaint was subject to dismissal because parallel conduct is consistent with competitive behavior as well as conspiracy. *Id.* at 555, 127 S. Ct. at 1964. The Court went on to explain that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice" to satisfy the pleading standards. *Id.* at 556, 127 S. Ct. at 1966.

The instant case does not involve mere parallel conduct or bare assertions of conspiracy. Rather, Plaintiff has sufficiently alleged that a conspiracy existed. Although it is possible that Silver Lake acted at Chesapeake's direction without knowledge of the conspiracy, Plaintiff has alleged enough facts to infer that Silver Lake carried out Chesapeake's directives with knowledge of the conspiracy.

Finally, the Supreme Court has cautioned that, because proof of antitrust is typically in the hands of the conspirators, dismissals prior to discovery should be granted very sparingly. *Hosp. Bldg. Co. v. Trs. of the Rex Hosp.*, 425 U.S. 738, 746, 96 S. Ct. 1848, 1853 (1976). It more recently explained, however, that "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Twombly*, 550 U.S. at 546, 127 S. Ct. at 1966-67. Unlike *Twombly*, however, the antitrust claims in this case will necessarily proceed, discovery will be conducted, and the case will continue. There will be a minimum added expense to keep Silver Lake in this case to conduct discovery into Silver Lake's knowledge and role in the alleged conspiracy.

Balancing the caution advised in *Rex Hospital* against the warning regarding expense in *Twombly*, the Court falls on the side of caution. Therefore, the Court will deny Silver Lake's motion to dismiss the antitrust claims against it. Of course, Silver Lake may move to dismiss the claims against it pursuant to Rule 56. Fed. R. Civ. P. 56.

Therefore,

**IT IS HEREBY ORDERED** that Defendant Encana's Motion to Dismiss (dkt. #7) is **GRANTED**.  The tortious interference claim against Encana will be **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Defendant Chesapeake's Motion to Dismiss (dkt. #8) is **GRANTED in part and DENIED in part**.  Plaintiff's claims for breach of contract (Count III) and unjust enrichment (Count IV) will be **DISMISSED with prejudice**.  Plaintiff's claim for tortious interference (Count V) will proceed.  The Court will defer ruling on the fraud claim (Count VI).

**IT IS FURTHER ORDERED** that Defendant Silver Lake's Motion to Dismiss (dkt. #10) is **GRANTED in part and DENIED in part**.  Plaintiff's claims for breach of contract (Count III) and unjust enrichment (Count IV) will be **DISMISSED with prejudice**.  Plaintiff's claims for violation of the Sherman Act (Count I), the Michigan Antitrust Reform Act (Count II), and tortious interference (Count V) will proceed.  The Court will defer ruling on the fraud claim (Count VI).

**IT IS FURTHER ORDERED** that Plaintiff may respond to the arguments raised at oral argument regarding the fraud claim within **14 days** of the entry of this Order.


Dated:  November 4, 2014                                           /s/ Gordon J. Quist
                                                                                GORDON J. QUIST
                                                                        UNITED STATES DISTRICT JUDGE