# EXHIBIT C

| STATE OF MICHIGAN<br>89th JUDICIAL DISTRICT<br>53rd JUDICIAL CIRCUIT | **COMPLAINT**<br>**FELONY** | DISTRICT:<br>CIRCUIT:<br>CTN: 96-14900734-01<br>COMPLAINT #: 2014-0076935-B |
|---|---|---|
| District Court ORI: MI160015J | Circuit Court ORI: MI160025J | AG ORI: MI820025A |
| THE PEOPLE OF THE STATE OF MICHIGAN<br>v | | Victim or complainant:<br>Larry Ginop, Steven Matthews,<br>Kenneth and Anita Ginop, Richard<br>Lobenherr, Steven and Darlene<br>Schmidt, David and Mary Lou<br>Oster, Gordon and Edith Kruskie<br>and Donald and Kathleen Schrier |
| CHESAPEAKE ENERGY CORPORATION<br>6100 NORTH WESTERN AVENUE<br>OKLAHOMA CITY, OK 73118<br>Co-defendant(s) | | Complaining Witness<br>SA PETE ACKERLY |
| | | Date: On or about<br>May 1, 2010 - December 31, 2010 |
| City/Twp./Village<br>CHEBOYGAN COUNTY | County in Michigan<br>Cheboygan | Defendant SID | Defendant DOB |
| Charge(s)<br>See Below | | | Maximum Penalty<br>See Below |

STATE OF MICHIGAN, COUNTY OF CHEBOYGAN
The complaining witness says that on the date and at Cheboygan County, the defendant, contrary to law,

In early 2010, defendant Chesapeake undertook a scheme through its agents to lock up northern Michigan landowners in natural gas leases, and prevent those landowners from taking other lease offers. To do so, Chesapeake and its land agents falsely told the landowners that mortgages were "no problem" on the leased land and offered to handle subordinating those mortgages. Later when competition from competitors had stopped and Chesapeake decided that Michigan's oil and gas prospects were not as lucrative as it liked, Chesapeake ordered mass lease cancellations based on the existence of those mortgages, as well as other pretextual reasons. The massive, orchestrated nature of the scheme indicates that Chesapeake entered into those leases knowing that it would cancel them if Chesapeake so chose – a scheme known as "cold drafting" in the industry. The landowners relied on the leases, in some cases spending the promised lease money before receiving it, and in many cases turning down other potential lessors. Chesapeake's scheme gave it uncompensated lease options at the expense of hundreds of northern Michigan landowners. Chesapeake signed between 700-800 landowners to leases; it honored less than 30 leases.

## COUNT 1: CRIMINAL ENTERPRISES - CONDUCTING

being associated with an enterprise, and its agents, including but not limited to OIL Niagaran and Northern Michigan Exploration Company, did knowingly conduct or participate in the affairs of the enterprise directly or indirectly through a pattern of racketeering activity, consisting of two or more of the following incidents of racketeering, to wit:

on or about between May 1, 2010 and December 31, 2010, in Michigan, defendant did commit the following offense for financial gain, to wit: did, with the intent to defraud or cheat, make or use a false pretense to cause a person to grant, covey, assign, demise, lease or mortgage any interest in land having a value of $1,000.00 or more but less than $20,000.00 from Larry Ginop; False Pretenses $1,000.00 or more but less than $20,000.00;

and on or about May 1, 2010 and December 31, 2010, in Michigan, defendant did commit the following offense for financial gain, to wit: did, with the intent to defraud or cheat, make or use a false pretense to cause a person to grant, covey, assign, demise, lease or mortgage any interest in land having a value of $1,000.00 or more but less than $20,000.00 from Steven Matthews; False Pretenses $1,000.00 or more but less than $20,000.00,

and on or about May 1, 2010 and December 31, 2010, in Michigan, defendant did commit the following offense for financial gain, to wit: did, with the intent to defraud or cheat, make or use a false pretense to cause a

person to grant, covey, assign, demise, lease or mortgage any interest in land having a value of $1,000.00 or more but less than $20,000.00 from Kenneth and Anita Ginop; False Pretenses $1,000.00 or more but less than $20,000.00,

and on or about May 1, 2010 and December 31, 2010, in Michigan, defendant did commit the following offense for financial gain, to wit: did, with the intent to defraud or cheat, make or use a false pretense to cause a person to grant, covey, assign, demise, lease or mortgage any interest in land having a value of $1,000.00 or more but less than $20,000.00 from Richard Lobenherz; False Pretenses $1,000.00 or more but less than $20,000.00,

and on or about May 1, 2010 and December 31, 2010, in Michigan, defendant did commit the following offense for financial gain, to wit: did, with the intent to defraud or cheat, make or use a false pretense to cause a person to grant, covey, assign, demise, lease or mortgage any interest in land having a value of $1,000.00 or more but less than $20,000.00 from Steven and Darlene Schmidt; False Pretenses $1,000.00 or more but less than $20,000.00,

and on or about May 1, 2010 and December 31, 2010, in Michigan, defendant did commit the following offense for financial gain, to wit: did, with the intent to defraud or cheat, make or use a false pretense to cause a person to grant, covey, assign, demise, lease or mortgage any interest in land having a value of $1,000.00 or more but less than $20,000.00 from David and Mary Lou Oster; False Pretenses $1,000.00 or more but less than $20,000.00,

and on or about May 1, 2010 and December 31, 2010, in Michigan, defendant did commit the following offense for financial gain, to wit: did, with the intent to defraud or cheat, make or use a false pretense to cause a person to grant, covey, assign, demise, lease or mortgage any interest in land having a value of $1,000.00 or more but less than $20,000.00 from Gordon and Edith Kruskie; False Pretenses $1,000.00 or more but less than $20,000.00,

and on or about May 1, 2010 and December 31, 2010, in Michigan, defendant did commit the following offense for financial gain, to wit: did, with the intent to defraud or cheat, make or use a false pretense to cause a person to grant, covey, assign, demise, lease or mortgage any interest in land having a value of $1,000.00 or more but less than $20,000.00 from Donald and Kathleen Schrier; False Pretenses $1,000.00 or more but less than $20,000.00,

which had the same or a substantially similar purpose, and which amount to or pose a threat of continued criminal activity; contrary to MCL 750.159i(1). [750.159I1]

FELONY: 20 Years and/or $100,000.00; criminal forfeiture of proceeds, substituted proceeds, and instrumentalities of racketeering listed on attached notification (see MCL 750.159j(4)); court may order court costs, costs of investigation, and/or costs of prosecution

**COUNT 2: FALSE PRETENSES - $1,000.00 OR MORE BUT LESS THAN $20,000.00**

did, with the intent to defraud or cheat Larry Ginop, make or use a false pretense to cause a person to grant, convey, assign, demise, lease, or mortgage any interest in land, having a value of $1,000.00 or more but less than $20,000.00; contrary to MCL 750.218(4)(a). [750.2184A]

FELONY: 5 Years and/or $10,000.00, or 3 times the value of the money or property involved, whichever is greater.

**COUNT 3: FALSE PRETENSES - $1,000.00 OR MORE BUT LESS THAN $20,000.00**

did, with the intent to defraud or cheat Steven Matthews, make or use a false pretense to cause a person to grant, convey, assign, demise, lease, or mortgage any interest in land, having a value of $1,000.00 or more but less than $20,000.00; contrary to MCL 750.218(4)(a). [750.2184A]

FELONY: 5 Years and/or $10,000.00, or 3 times the value of the money or property involved, whichever is greater.

**COUNT 4: FALSE PRETENSES - $1,000.00 OR MORE BUT LESS THAN $20,000.00**

did, with the intent to defraud or cheat Kenneth and Anita Ginop, make or use a false pretense to cause a person to grant, convey, assign, demise, lease, or mortgage any interest in land, having a value of $1,000.00 or more but less than $20,000.00; contrary to MCL 750.218(4)(a). [750.2184A]

FELONY: 5 Years and/or $10,000.00, or 3 times the value of the money or property involved, whichever is greater.

**COUNT 5:  FALSE PRETENSES - $1,000.00 OR MORE BUT LESS THAN $20,000.00**
did, with the intent to defraud or cheat Richard Lobenherz, make or use a false pretense to cause a person to grant, convey, assign, demise, lease, or mortgage any interest in land, having a value of $1,000.00 or more but less than $20,000.00; contrary to MCL 750.218(4)(a). [750.2184A]
FELONY: 5 Years and/or $10,000.00, or 3 times the value of the money or property involved, whichever is greater.

**COUNT 6:  FALSE PRETENSES - $1,000.00 OR MORE BUT LESS THAN $20,000.00**
did, with the intent to defraud or cheat Steven and Darlene Schmidt, make or use a false pretense to cause a person to grant, convey, assign, demise, lease, or mortgage any interest in land, having a value of $1,000.00 or more but less than $20,000.00; contrary to MCL 750.218(4)(a). [750.2184A]
FELONY: 5 Years and/or $10,000.00, or 3 times the value of the money or property involved, whichever is greater.

**COUNT 7:  FALSE PRETENSES - $1,000.00 OR MORE BUT LESS THAN $20,000.00**
did, with the intent to defraud or cheat David and Mary Lou Oster, make or use a false pretense to cause a person to grant, convey, assign, demise, lease, or mortgage any interest in land, having a value of $1,000.00 or more but less than $20,000.00; contrary to MCL 750.218(4)(a). [750.2184A]
FELONY: 5 Years and/or $10,000.00, or 3 times the value of the money or property involved, whichever is greater.

**COUNT 8:  FALSE PRETENSES - $1,000.00 OR MORE BUT LESS THAN $20,000.00**
did, with the intent to defraud or cheat Gordon and Edith Kruskie, make or use a false pretense to cause a person to grant, convey, assign, demise, lease, or mortgage any interest in land, having a value of $1,000.00 or more but less than $20,000.00; contrary to MCL 750.218(4)(a). [750.2184A]
FELONY: 5 Years and/or $10,000.00, or 3 times the value of the money or property involved, whichever is greater.

**COUNT 9:  FALSE PRETENSES - $1,000.00 OR MORE BUT LESS THAN $20,000.00**
did, with the intent to defraud or cheat Donald and Kathleen Schrier, make or use a false pretense to cause a person to grant, convey, assign, demise, lease, or mortgage any interest in land, having a value of $1,000.00 or more but less than $20,000.00; contrary to MCL 750.218(4)(a). [750.2184A]
FELONY: 5 Years and/or $10,000.00, or 3 times the value of the money or property involved, whichever is greater.

Upon conviction of a felony or an attempted felony court shall order law enforcement to collect DNA identification profiling samples.

The complaining witness asks that defendant be apprehended and dealt with according to law.

Warrant authorized on 6/4/14 by:

Complaining witness signature

Subscribed and sworn to before me on _____
Date

Scott L. Teter (P40777)
Assistant Attorney General
Corporate Oversight Division
P.o. Box 30755
Lansing, MI 48909
(517) 373-1160
☐ Security for costs posted

Judge/Magistrate/Clerk          Bar no.

# STATE OF MICHIGAN

## IN THE 89ᵗʰ DISTRICT COURT FOR THE COUNTY OF CHEBOYGAN

**THE PEOPLE OF THE STATE OF MICHIGAN,**
                **Plaintiff,**

**V**                                                      **Case # 14-0359-FY**

**CHESAPEAKE ENERGY CORPORATION,**
                **Defendant.**


SCOTT L. TETER
MATTHEW K. PAYOK
Counsel for Plaintiff
Michigan Department of Attorney General
Corporate Oversight Division
PO Box 30755
Lansing, MI  48909

HEATHER TEWKSBURY
Counsel for Chesapeake Energy
(admitted *pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
950 Page Mill Road
Palo Alto, CA  94304

MICHAEL EKDAHL
*Local co-counsel for Defendant*
214 Water Street, PO Box 625
Cheboygan, MI  49721

_____/

## OPINION & ORDER

### FACTS

In May of 2010, Northern Michigan Exploration Company (NMEC), a wholly owned indirect subsidiary of Chesapeake Energy Corporation (Defendant), hired OILN to act as a leasing agent to purchase oil and gas leases in Michigan. OILN contracted with Western Land Services (Western) to assist in obtaining oil and gas leases in the summer of 2010 in Northern Michigan. Western was acting as

NMEC's sub-agent through OILN.  In 2010, decisions on behalf of NMEC were ordinarily made by employees of Chesapeake Energy Corporation.

Upon signing the agreement with NMEC to act as leasing agents, OILN quickly, with the help of Western flooded Northern Michigan with landmen to purchase oil and gas leases from landowners in certain areas of Northern Michigan.  Landmen would contact landowners and discuss oil and gas leases and eventually offer to purchase acreage at a price that ranged from $250.00 to $1400.00 an acre. During May, June, July and August of 2010, landman from Western and OILN signed approximately 850 oil and gas leases and Orders for Payment (OFP) on behalf of OILN. The oil and gas leases gave Defendant the right to look for oil and gas on landowners' property and the Orders for Payment contained the amount Western was paying for that right.

In negotiating with landowners, landmen had landowners sign an Oil and Gas Lease along with an Order for Payment.  The Orders for Payment provided generally that Lessee, Western Land Services, subject to its inspection and approval of title, approval of any liens, encumbrances, or mortgages, would make payment to Lessor within 90 banking days. Several landowners questioned landmen whether mortgages would be a problem, and the landmen indicated to landowners that mortgages were not a problem.  During the preliminary hearing, David McGuire, OILN VP and an experienced landman, and Kevin Hackner, an experienced landman from Western, both testified that normally Orders for Payment are not cancelled because a landowner has a mortgage as most land is encumbered and if that were the case both indicated that you could never obtain an oil and gas lease.

In late July, Defendant indicated to Dave McGuire that it wanted to stop all leasing.  When Mr. McGuire inquired why leasing was ceasing, Aubrey McClendon, Chesapeake CEO indicated on July 25, 2010 that Defendant had just drilled a dry hole and in his words "dry holes often dramatically change things." (See exhibit 224). After drilling the dry hole, Defendant's instructions to Dave McGuire were to find any reason to reject the leases so that they could be cancelled.  In an email dated July 30, 2010, Dave Bolton, a Chesapeake executive, instructed Leslie Irish (who was working for David McGuire) "There should be no misunderstanding, as Henry (Hood) advised, we do not wish you to tender payment on any leases." (See Exhibit 228).  On August 2, 2010, Henry Hood, Sr. Vice President – Land & Legal/General Counsel for Defendant emailed David McGuire the following:

"I appreciate the awkward position you're in.  We do have ethical obligations as landman, but we also have overriding fiduciary obligations to Chesapeake shareholders and other stakeholders. The fact is, these leases are largely worthless now and the prospect of paying $35 million for nothing at this point is not acceptable.  Paying all these minerals owners will only provide a windfall for them.  We need to work hard to get our arms around these obligations and close on only those we absolutely must.  Please work with our team to determine which leases can be rejected." (See Exhibit 232).

As instructed by Defendant, Dave McGuire ran title checks and rejected and cancelled leases for any reason it could including unreleased oil and gas leases, unreleased mortgages, leases not properly executed (See exhibit 94), leases not on an approved form (See exhibit 108), and leases executed subsequent to the end of the project. (See exhibit 113).

### LAW

If "drilling a dry hole dramatically changes things", then landowners entering into oil and gas leases should have been informed of that fact before signing leases and orders for payment (OFPs). Specifically, leases should have contained language informing lessors that bonus payments would be paid only if oil and gas are found near or on lessor's property. Failure to disclose that condition constitutes false pretenses. "The false pretense can be the failure to speak when it is necessary to do so". *People v Etzler*, 292 Mich 489, 491 (1940); *People v. Jory*, 443 Mich 403 (1993).

All the lessors testified that had the OFP and lease been conditioned on Defendant finding oil and gas on or near their property, they wouldn't have signed the lease with the Defendant. Dave McGuire, a respected landman with 30 years of experience in the oil and gas industry and involved in securing leases, testified that if he would have known that payment of the OFP was conditioned on finding oil and gas, he would have informed the lessors of that fact. Kevin Hackner, a landman with over 19 years of experience in the oil and gas industry and an integral person securing leases in this case, indicated that had the lease been contingent on finding oil and gas on or near a lessor's property and the same not told to the lessor, he would not have worked on the project. "I'd like to think I wouldn't secure documents under false pretenses."

Addressing the false pretense statute, the Michigan Supreme Court has indicated:

The design of the statute was to protect the weak and shield the credulous against the acts and likes of the shrewd and designing; and the real question on this point ought to be, "Was the pretense designedly false, and made to induce action claimed and was it successful?" *People v Summers*, 115 Mich 537, 545 (1973) Id at 412.

Defendant failed to disclose to lessors that it would not pay the OFP unless oil and gas were found on or near lessor's property thereby making a false representation (the failure to speak when necessary to do so). This false representation induced lessors to sign an oil and gas lease and OFP which Defendant knew it wouldn't pay if it drilled a dry hole.

Defendant carried out the pretense by claiming that it had the authority to reject or defect all leases pursuant to the language of the OFP which read "subject to all title, mortgages, liens or encumbrances" when in reality it cancelled the majority of the leases (close to 800) due to drilling a dry hole. (See exhibits 224, 228 and 232). Its actions establish probable cause to believe that the crimes of

false pretenses were committed for each of the 20 charged counts and form the basis for the predicated acts of racketeering.  Accordingly, Defendant is bound over on all charges contained in the amended complaint.

**IT IS SO ORDERED.**

Dated: ___9-8-14___                    _____

                                       Maria I. Barton                    P-43034
                                       89th District Court Judge